Stephanie L. LAWRENCE, Appellant,

v.

David A. BORDNER, Appellee.

Superior Court of Pennsylvania.

Submitted June 12, 2006.

Filed Sept. 6, 2006.

**1110**

Nichole M. Waters, Harrisburg, for appellant.

David Bordner, appellee, Pro Se.

BEFORE: STEVENS, ORIE MELVIN, and POPOVICH, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from an Order entered in the Court of Common Pleas of Dauphin County on October 20, 2005, at which time the PFA court dismissed, without prejudice, a temporary protection from abuse Order filed by Appellant, Stephanie Lawrence, on October 10, 2005. We reverse and remand.

¶ 2 The salient facts and procedural history in the instant matter are as follows: On October 10, 2005, Appellant filed a Petition for Protection from Abuse ("PFA")[1] on behalf of her minor child, G.B., age fifteen. In the petition, Appellant averred that G.B.'s father, Appellee, David Bordner, choked G.B., threw her against a wall, and threatened to punch her in the face on September 30, 2005. Appellant also related other instances of abuse which had occurred since July of 2005. On October 10, 2005, the lower court entered a Temporary Protection from Abuse Order.

¶ 3 On October 20, 2005, a PFA hearing was held, though Appellee did not appear. Appellant testified that she has two children with Appellee, G.B. and J.B., age 13. N.T., 10/20/05, at 3. A Custody Order was entered in August of 2000, according to which Appellee was granted partial physical custody of G.B. N.T., 10/20/05, at 3–4.[2]

---

1. 23 Pa.C.S.A. § 6101–6118.

2. In its February 7, 2006, Opinion, the PFA court noted that Appellant was granted sole legal custody of the children in this Order, and the Order had not been modified as of that date. In addition, the PFA court also explained that on October 13, 2005, Linda A. McElheny, G.B.'s maternal grandmother, filed a Complaint for Custody and Request for

¶ 4 In June of 2005, G.B. went to live with Appellee because she was unhappy with the rules Appellant required her to follow, and she wanted to develop a relationship with her father. N.T., 10/20/05, at 4. Appellant believes Appellee has a problem with alcohol, which is evinced by his four DUIs and his multiple stays in rehab since Appellant has known him. N.T., 10/20/05, at 5.

¶ 5 G.B. testified that on September 30, 2005, Appellee came home with a bottle of vodka from which he drank and encouraged G.B. to do likewise. N.T., 10/20/05, at 6–7. G.B. expressed her discomfort in being with her father while he was drinking, and she informed him she was calling her stepmother to pick her up. N.T., 10/20/05, at 7.

¶ 6 Appellee called G.B.'s stepmother back and said if she were to come near G.B. he would kill her. Appellee and G.B. continued to argue during which Appellee put his hands around G.B.'s neck and choked her. N.T., 10/20/05, at 7. The struggle moved into the kitchen, where Appellee choked G.B. again and threw her into the dining room. N.T., 10/20/05, at 8. G.B.'s stepmother did arrive, though G.B. declined to go with her, because she believed Appellee had calmed down and that the tension would subside if she went to bed. N.T., 10/20/05, at 8.

¶ 7 As G.B. was detailing the continuing struggle in which she engaged with Appellee,[3] the trial court interrupted the testimony to inquire as to the existence of a Custody Order. N.T., 10/20/05, at 8–10. Counsel for Appellant acknowledged the

existence of a Custody Order and that according to its terms, Appellant had primary physical custody of G.B. N.T., 10/20/05, at 10. Appellant also acknowledged G.B. had resumed living with her. N.T., 10/20/05, at 10.

¶ 8 The PFA court indicated it appeared Appellant wanted to modify the existing Custody Order through the vehicle of a Protection from Abuse Order, which it believed was improper. N.T., 10/20/05, at 11. The PFA court indicated to Appellant's counsel its position that the proper procedure would be to file a Petition to Modify a Custody Order. The PFA court added that "[it is] not going to be a party to this kind of procedure. [It is] not going to be a party to using the PFA as a way to modify a Custody Order." N.T., 10/20/05, at 11.

¶ 9 The PFA court explained to Appellant that if it were to grant a permanent PFA Order, that Order would not change the terms of the existing Custody Order but instead would create a confusing situation in which two Orders at odds with each other would exist. N.T., 10/20/05, at 11. The hearing court acknowledged the PFA statute permits it to issue a Custody Order in accordance with a PFA Order but believed that such action should be done only on an emergency basis. N.T., 10/20/05, at 13–14. The PFA court instructed that where, as herein, a Custody Order has been in effect, a party may file an emergency petition seeking to have the terms of that Custody Order modified; if there is no emergency, the party can simply file a Petition to Modify the Order. N.T., 10/20/05, at 14.

---

Expedited Custody Conference, in which she sought an Order granting primary physical and shared legal custody of G.B. and visitation rights with J.B. PFA court Opinion, 2/7/06, at 1–2. An Interim Order of Court was entered in this matter on January 19, 2006.

3. G.B. was in the midst of explaining how Appellee tore her comforter from her arms and threatened to put his fist through her face.

¶ 10 In response to the PFA court's words, Appellant expressed her concerns as follows: "I have a fear of him coming to school or coming over to my house. He's continuing to make phone calls and threatening us. Is there any way that the courts can offer at least something temporary until a custody change can be made?" N.T., 10/20/05, at 15. The PFA court instructed Appellant to refuse to allow Appellee to exercise his custody rights, if he attempted to do so. N.T., 10/20/05, at 15–16.

¶ 11 Counsel for Appellant asked the PFA court to entertain an oral Petition to Modify the Custody Order, which it denied. N.T., 10/20/05, at 14.

¶ 12 On November 18, 2005, Appellant filed a timely Notice of Appeal. On November 22, 2005, the PFA court ordered Appellant to file a concise statement of the matters complained of on appeal, and on December 1, 2005, Appellant filed the same.

¶ 13 In her brief, Appellant asks the following:

Did the [PFA] court commit an error of law by not entering a final protection from abuse order where [Appellant] proved abuse and the [PFA] court found abuse?

Did the [PFA] court commit an error of law when it limited [Appellant] to a custody action as her exclusive remedy?

Did the [PFA] court commit an error of law and abuse its discretion when it failed to consider past abuse?

¶ 14 As a determination of the merits of Appellant's second issue on appeal requires an analysis of the other two, we shall consider these issues together.

 ¶ 15 This Court reviews a lower court's legal conclusions in a Protection from Abuse action for an error of law or an abuse of discretion. *Hood–O'Hara v. Wills*, 873 A.2d 757, 759 (Pa.Super.2005).

The purpose of Pennsylvania's Protection from Abuse Act is to protect victims of domestic violence from those who perpetrate such abuse; its primary goal is "advance prevention of physical and sexual abuse." *Fonner v. Fonner*, 731 A.2d 160, 161–62 (Pa.Super.1999).

¶ 16 In its February 2, 2006, Opinion, the PFA court stated that nowhere in the record did it make a finding of abuse, nor did it fail to consider aspects of past abuse, as no such incidents were offered. Thus, it found Appellant's first and third issues to be without merit. PFA court Opinion, 2/2/06, at 4. A review of the record does reveal the PFA court did not make a finding of abuse or consider incidents of past abuse; however, it did not do so because it determined a protection from abuse hearing was an improper forum in which to hear the matter, and Appellant was prevented from presenting any testimony regarding past abuse. In pertinent part, the hearing court stated the following:

Well, I'm not going to follow that case law. You can take me up on appeal if you want to, and I will then let the Superior Court of Pennsylvania step into my role here as a judge in this case and let the Superior Court became (sic) a custody court if they (sic) think that's what the PFA business should be.

But we have a courtroom full of people who want PFAs. This case comes in here under the guise of a PFA and, *technically, I agree with you.*

Under the statute, I can, as part of a PFA, issue Custody Orders, but it's— my understanding is that the intent of the legislation is that any custody provisions that a PFA judge puts into place are supposed to be done on an emergency basis. It's a method by which I can handle the custody issue.

N.T., 10/20/05, at 13–14 (emphasis added).

¶ 17 The PFA court's statement that it agreed with counsel seems to suggest it

acknowledged Appellee's actions constituted abuse under the PFA, though its failure to elaborate upon those words makes it difficult to discern its intent when uttering them. In addition, while it made a finding that no testimony of past abuse was presented, the PFA court prevented Appellant from putting forth such evidence. Instead, the PFA court abruptly determined that Appellant was not entitled to a final protection from abuse Order for G.B. and limited Appellant to a custody action as her exclusive remedy for the alleged abuse Appellee inflicted upon G.B. For the reasons set forth, *infra*, we find this to be an error of law.

¶ 18 While Pa.R.C.P. 1915.4(e) allows a party to seek emergency or interim special relief at any time after an action has commenced, 23 Pa.C.S.A. § 6108(a) provides that "the court may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children." In addition, the order of agreement may include, "awarding temporary custody of or establishing temporary visitation rights with regard to minor children." 23 Pa.C.S.A. § 6108(a)(4). Also, "[i]n order to prevent further abuse during periods of access to the plaintiff and child during the exercise of custodial rights, the court shall consider, and may impose on a custody award, conditions necessary to assure the safety of the plaintiff and minor children from abuse." 23 Pa.C.S.A. § 6108(a)(4)(vi).

¶ 19 This Court has not uniformly construed the aforementioned provisions. In *Rosenberg v. Rosenberg,* 350 Pa.Super. 268, 504 A.2d 350, 351 n. 1 (1986) we stated that the right of the trial court to award temporary custody and to establish temporary visitation rights with regard to minor children was intended to provide ancillary relief regarding minor children in abuse actions but not to establish a procedure for

determining permanent custody. To the contrary, in *Dye for McCoy v. McCoy,* 423 Pa.Super. 334, 621 A.2d 144, 145 (1993) we determined that when the terms of a custody order conflict with a PFA order, the trial court may alter the custody order and remand for clarification to avoid the conflict. "Nevertheless, it is well settled, that in any instance in which child custody is determined, the overriding concern of the court must be the best interest and welfare of the child, including the child's physical, intellectual, emotional and spiritual well-being." *Shandra v. Williams,* 819 A.2d 87, 91 (Pa.Super.2003) (citations omitted).

¶ 20 In *Dye for McCoy, supra,* this Court disagreed with the PFA court's statement it did not have authority to alter a prior custody order after the PFA hearing pursuant to 23 Pa.C.S. § 6108(a)(4). Upon noting our concern with the best interests of the minor child, we stressed that Section 6108(a)(4) provides, in pertinent part, "[t]he court shall consider, and may impose on a custody award, conditions necessary to assure the safety of the plaintiff and minor children from abuse." *Dye for McCoy,* 621 A.2d at 145. We further declared the following:

A PFA Order may not impose other than an emergency support or custody Order pursuant to section 6108, Relief, (a)(4) regarding custody and (a)(5) regarding support. It appears, however, that section 6108(a)(4) precludes a custody award, pre-existing or following the PFA Order, from nullifying the PFA Order as its purpose is to assure the safety of a child or children above and beyond any other Orders or relationships involving the children. To hold otherwise would have the effect of emasculating the central and extraordinary feature of the PFA which is to prospectively control and prevent domestic vio-

**1114**

lence.... The duration of a PFA Order may not be extended beyond one year in the absence of further abuse, however, either party may petition the court to amend the Order at any time. 23 Pa. C.S.[A] § 6108(b), Duration and amendment of order or agreement. It is this amendment process which may be utilized to determine whether a more liberal custody/visitation Order may become operative. Based on the foregoing reasons of law and fact, therefore, we remand this matter for the sole determination [of] whether the terms of the custody Order are in conflict with the PFA Order requiring a specific suspension or supersedance of the custody Order by the PFA to avoid conflict and continuing litigation over this issue.

*Dye for McCoy v. McCoy* 621 A.2d at 145–146.

■ ¶ 21 Herein, the record reveals that the PFA court prevented any evidence from being introduced during the course of the PFA hearing which related to the best interests of the child and "[a]s a result, the trial court, as fact finder, was not exposed to any of the relevant factors that would have enhanced its ability to make an informed decision about the best interests of the child." *Shandra,* 819 A.2d at 92. Furthermore, the PFA court seems to have acknowledged Appellee's behavior toward Appellant was abusive, though it instructed Appellant to pursue her concerns regarding Appellee's treatment of G.B. through a Petition to Modify the Custody Order. We find that the trial court's refusal to find a PFA was warranted and/or modify the existing Custody Order on Oc-

tober 20, 2005, was in error in that it in doing so, it placed its concern with civil procedure over a consideration of the best interest of G.B.[4]

¶ 22 As such, we remand this matter for a determination of whether a permanent PFA is warranted. If the PFA court determines a permanent PFA is proper, it shall then decide whether the terms of the custody Order would be in conflict with the PFA order and require a specific suspension or supersedance of the custody Order. If the PFA court finds a permanent PFA is not warranted, then it shall consider testimony regarding the best interests of G.B. and make any necessary modifications to the existing Custody Order.

¶ 23 Case remanded for consideration in conformance with this Memorandum. Jurisdiction relinquished.

---

4. In making this determination, it is not our intention to set a precedent under which it will be deemed proper in future matters to utilize the PFA, rather than a Petition for Special Relief in Custody, as the proper avenue for a party to pursue in a circumstance similar to that herein. While a counseled party should be instructed to file a Petition for Special Relief in Custody, we are providing a party who initially files a PFA with a means of obtaining protection and lower courts with the ability to amend an existing Custody Order to effect the same.