# White v. Waller

*Jeffrey R. White*, pro se petitioner
*Finncourt Shelton*, for respondent

DOZOR, *J.*, September 11, 2013—

NATURE AND HISTORY OF THE CASE:

This appeal is considered a direct appeal from this court's July 11, 2013 order providing petitioner/appellee with a protection from abuse (PFA) order against respondent/appellant. On August 7, 2013, appellant filed the instant appeal, the nature and history of the case is as follows:

Appellee filed for a petition for a PFA on June 12,

2013. Following a hearing, held on July 11, 2013, a temporary PFA was issued by the Honorable Ann A. Osborne. Appellee was notified that that a hearing would be scheduled for June 20, 2013 and that appellant must be served with a copy of the PFA petition and order. A review of the record reveals that the June 20, 2013 PFA hearing was continued to July 11, 2013 by the Honorable Spiros E. Angelos. On July 11, 2013, both parties appeared before this court, appellee was self-represented and appellant was represented by her current counsel. Following an evidentiary hearing that was held on July 11, 2013, the undersigned trial court issued a final PFA order. The final PFA order is the standard final PFA order Issued by judges in the Court of Common Pleas In Delaware County, which states that appellant shall not "abuse, harass, stalk, threaten any of the above persons in any place where they might be found," and that appellant, shall not contact appellee, or any other person protected under this order, by telephone or by any other means, including third persons." This final order Is in effect from July 11, 2013 until December 31, 2013.

On August 7, 2013 the instant appeal by appellant followed. Appellant's concise statement of matters complained of on appeal, alleges the following areas of error:

1. That the issuance of the PFA was contrary to the evidence presented in open court.

2. The issuance of the PFA was contrary to the current case law in the Commonwealth of Pennsylvania.

438

Jeffrey White, petitioner/appellee, is an officer with the Colwyn Borough Police Department, who resides in Philadelphia, Pennsylvania and who had dated, respondent/appellant, Yolanda Walker. Yolanda Walker is a resident of Lansdowne, Pennsylvania. Appellee testified that he was dating appellant and last saw her a week before the incident on March 14, 2013. Appellee testified that although they had not seen each other in a week, appellant had been telephoning appellee. At first the telephone calls were about appellant just wanting to speak with appellee. The telephone calls between the parties then turned to arguing and "it just started getting worse and worse," according to Appellee. [N.T., July 11, 2013, pgs. 7-8].

On March 14, 2013, while appellee was working, as a Colwyn Borough Police Officer, in full uniform and while in a marked police vehicle, appellant made contact with appellee. Appellant was in her parked vehicle with the window rolled down. As appellant was finishing the police call he was working on, he was "cursed out" by appellee. [N.T., July 11, 2013, p. 6]. Appellee was also called a few derogative names by appellant. [N.T., July 11, 2013, p. 8]. Appellee told appellant to stop harassing him and following him around.

Appellee then proceeded to his marked police vehicle and left the area en route to another police call. As appellee was leaving one police call and heading to back up another police officer, appellant followed appellee's marked patrol vehicle which he was operating with full lights and sirens at the time. [N.T., July 11, 2013, p. 6]. Appellant followed

appellee through stop signs. As appellee was being followed by appellant, appellee telephoned his corporal, informing her of the situtation. As appellee was driving, with appellant following him, the corporal arrived in the area and began driving with appellee's and appellant's vehicles. Appellee was instructed by his superior officer (the corporal) to make certain turns. appellant continued to follow appellee's marked police vehicle, which had its lights and sirens activated. Appellant continued to follow appellee's marked patrol vehicle, with appellee continuing to disregard traffic safety devices in her pursuit of and her harassing of appellee.

The corporal, with lights and sirens activated, attempted to conduct a traffic stop of appellant's vehicle; however, appellant failed to yield to the lights and sirens of the corporal's police vehicle. Appellant failed to yield to the marked police vehicle with active lights and sirens, driven by the corporal through several boroughs: Colwyn, Darby, Yeadon and nearly into Lansdowne, before ultimately stopping her vehicle. When appellant finally stopped her vehicle there were four marked patrol vehicles that were in pursuit of appellant and these four police vehicles were necessary in assisting the Colwyn Corporal in effectuating the traffic stop. As a result of her actions on March 14, 2013, criminal charges were filed against appellant and she was found guilty of harassment and a motor vehicle violation related to her vehicle not being properly insured. This court was not provided with any documentation, by either party, related to these criminal charge and motor vehicle violations. This court notes that appellant did not provide any testimony or evidence to refute appellee's

testimony relative to the criminal charges and motor vehicle violations or their outcome.

This court notes that attached to appellee's petition for a PFA is a copy of the Colwyn Borough Police Department's incident report related to the March 14, 2013 incident. Corporal Hayes' incident report confirms appellee's testimony regarding the incident and appellant's actions on March 14, 2013.

This court notes that there is a supplemental narrative, written on May 1, 2013 by another Colwyn Borough Police Officer. This May 1, 2013 incident report relates that appellant approached this Colwyn. Borough Police Officer regarding the complaint filed by Corporal Hayes and the March 14, 2014 incident.

Appellee credibly testified that appellant had gone, on at least three occasions, to the Colwyn Borough Mayor, as well as to the borough secretary and various other employees and police officers in the Colwyn Borough disparaging appellee's name. Appellant approached another Colwyn Police Department Corporal In front of the Colwyn Borough Police Department and when appellant saw appellee, she pointed to him and said, there goes that "no good bastard." Appellant also confronted appellee at the Colwyn Borough Police Department, again cursing him out and calling appellee a "fucking bastard."

The court found appellee's testimony credible and the testimony of appellee was not rebutted or denied by appellant.

## DISCUSSION:

Appellant's allegations of error are that the trial court erred in granting a final protection from abuse order because there was not sufficient evidence to issue the order and that the issuance of that final PFA order was contrary to the law of the Commonwealth of Pennsylvania. Specifically, appellant alleges that the evidence was insufficient to issue a final PFA order because appellee did not present evidence or proof of injury, or a continued course of conduct, and that the testimony elicited on July 11, 2013 or contained in the complaint does not fall within the scope of the law. Appellant also alleges that the PFA order is contrary to the law, 23 Pa.C.S.A. Section 6102 et seq., since there was no emergent need for appellee to request or be issued a temporary or final PFA order, because the incident occurred on March 14, 2013, ninety (90) days before PFA order was sought, appellant alleges that the testimony presented by appellee was "un-believable." Appellant alleges that appellee's actions in seeking the PFA are pre-textual to protect himself and Corporal Hayes from their illegal police activity.

It is well settled in the Commonwealth of Pennsylvania case law that when a sufficient of the evidence claim is raised on appeal the evidence is weight "In the light most favorable to the petitioner and granting [him] the benefit of all reasonable inference, [to] determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence." *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super.1999) (quoting *Miller on Behalf of Walker v. Walker*, 445 Pa. Super. 537, 665 A.2d 1252, 1255 (1995)).

When reviewing an appeal that challenges the

sufficiency of the evidence, the appellate court must determine whether the evidence was sufficient to sustain the trial court's conclusions by a preponderance of the evidence. The preponderance of the evidence standard is "defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." *Mescanti v. Mescanti*, 2008 PA Super 201, 956 A.2d at 1020 (quoting *Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004) (citation omitted).

Appellant also alleges that this court's granting of a final PFA order was contrary to the law of the Commonwealth of Pennsylvania. When reviewing a trial court's actions in a PFA case, the appellate court is to review the presiding trial court's legal conclusions for an error of law or abuse of discretion. *Ferko-Fox v. Fox*, 2013 PA Super 88, 68 A.3d 917, 920 (2013); *Commonwealth v. Walsh*, 36 A.3d 613, 617 (Pa. Super. 2012); *Lawrence v. Bordner*, 907 A.2d 1109, 1112 (Pa. Super. 2006). In *Commonwealth v. Widmer*, 560 Pa. 308, 322, 744 A.2d 745, 753 (2000), the Pennsylvania Supreme Court defined "abuse of discretion" as follows:

The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, with the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not

merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Widmer*, 560 Pa. at 322, 744 A.2d at 753 (quoting *Coker v. S.M. Flickinger Co., Inc.*, 533 Pa. 441, 447, 625 A.2d 1181, 1184-85 (1993)); *Custer v. Cochran*, 933 A.2d 1050, 1053-54 (Pa. Super. 2007) (en banc); *Mescanti v. Mescanti*, 2008 PA Super 201, 956 A.2d 1017, 1019 (2008).

This court will address all these issues as one, since they are interrelated. This court notes that the ultimate purpose of the PFA Act is the protection of victims from continued victimizations. The PFA Act, unlike the certain criminal statutes, does not provide for a protected class of citizens, i.e. police officers. Rather, the PFA Act simply provides protections for persons who had or have certain types relationships with the alleged abuser. In this case, appellee and appellant were "current or former sexual or intimate partners," having been girlfriend/boyfriend around the time of the first incident on March 14, 2013. The PFA Act defines abuse as follows:

The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

...

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper

authority, under circumstances which place the person in reasonable fear of bodily injury.

The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. §6102(a)(2) and (5).

In this case, there is no dispute that appellant and appellee were persons who were protected under the PFA Act and that appellee could have been issued a PFA based upon their status of "sexual or intimate partners." The sole issue then remains, does appellant's actions rise to the level which required protection under the PFA.

Appellant alleges that the conduct testified to during the PFA hearing on July 11, 2013 and contained within the PFA petition provides "no proof of a continued course of conduct," and as such the contact on "5/1/13 was not harassment." *See* appellant's concise statement of matters complained of on appeal, ¶2. However, what appellant fails to acknowledge is that her conduct of March 14, 2013 or May 1, 2013 alone is not the issue in this case. Rather, this court was able to consider appellant's harassing actions regarding appellee that began before March 14, 2013, when appellee began telephoning appellant. Those harassing actions continued on March 14, 2013 when she confronted appellee while he was on duty as a police officer who was operating a marked police vehicle with active lights and sirens and continued to follow him, despite the fact that appellant was engaging in criminal behavior while doing so, i.e., committing traffic violations and stalking

and/or harassing appellee. Appellant's actions on March 14, 2013 were such that appellee was in reasonable fear for his safety such that appellee telephoned for assistance while appellant was following him and committing motor vehicle violations. If following appellee who was in a marked patrol vehicle with active lights and sirens was not enough of a reason for appellee to fear for his safety, appellant continued her actions when the corporal arrived on scene.

Appellant failed to stop her pursuit of appellee when the corporal arrived on scene and she continued her pursuit while the corporal's vehicle had its lights and sirens activated. When appellant still did not stop her pursuit of appellee, the corporal then required the assistance of at least four other marked police vehicles before appellant stopped her vehicle.

Appellant's actions were such that they led to criminal charges and a guilty verdict. This court notes that appellant's own trial counsel admitted in open court on July 11, 2013, that she committed the crimes in which she was found guilty. [*See* N.T. p. 21].

Appellant's harassing actions continued when she approached members of the Borough regarding the March 14, 2013 incident, when those borough employees were not in a position to handle her complaints and appellant's actions continued through May 1, 2013. Appellant also approached another Colwyn Borough Police Officer to complain about the criminal charges that were filed in relation to the March 14, 2013 Incident. Appellant went to another corporal in the Colwyn Borough Police

Department to complain about appellee, appellant and the corporal were standing on the steps of the police station and when she saw appellee, she pointed at him and called Appellee a "no good" or "fucking bastard". [*See* N.T. p. 12].

It is also well settled that when a PFA petition is filed, there need not be an accompanying police report and that the PFA court is free to believe a petitioner's testimony alone. *Custer v. Cochran*, 2007 PA Super 290, 933 A.2d at 1058 (citing *Hood-O'Hara v. Wills*, 873 A.2d 757, 760 (Pa. Super. 2005)). This court notes that upon listening to the testimony of appellee and the arguments of appellant's counsel, since appellant did not provide this court with any testimony of the evidence to contradict appellee's testimony, this court was tasked with rendering a determination of appellee's credibility. During the July 11, 2013 PFA hearing, this court was able to view the appellee's facial expressions and mannerisms, which is critical for the PFA court to render its credibility determinations. Based upon a review of the PFA petition that was filed, which included a police incident report regarding the day in question and upon hearing the testimony from appellee/petitioner regarding appellant's actions prior to March 14, 2013, on March 14, 2013, on May 1, 2013 and all the other information provided to this court regarding appellant's actions towards appellee, this court determined that appellee/petitioner was credible in his testimony. This court notes that during the July 11, 2013 Hearing this court states "her actions that day, following him, following him and following him — and I believe that's credible testimony's credible — rises to

the level of abuse." [*See* N.T. p. 21]. Appellant's trial counsel's response was "Very good, Your Honor. I don't dispute that." [*See* N.T. p. 21]. Trial counsel's sole issue is "he waited 90 days to file something [sic the PFA]" [*See* N.T. p. 21]. As in all cases where an appeal is taken, the appellate court will defer to the credibility determinations of the trial court as related to the witnesses who appeared before the trial court.

In the case, *sub judice*, the court in granting the PFA determined that the sole witness, appellee, provided credible testimony that the course of conduct exhibited by appellant provided appellee with a reasonable fear of his safety. And this court notes that, trial counsel did not dispute on July 11, 2013, that appellee was not credible nor did trial counsel dispute that appellant's actions rose to the level of abuse, the *sole* issue of the July 11, 2103 hearing was did appellee wait too long to file for a PFA. This court has thoroughly researched this issue and has determined that in cases where there is a course of conduct which rises to the level of a PFA being granted, there is no statute of limitation in filing a PFA.

The facts and circumstances in this case, as summarized above, provided this court with ample evidence that appellee was a protected person under the PFA Act and that appellant engaged in a course of conduct against appellee such that a final PFA order was required.

The appellate court must consider the sufficiency of the evidence in the context of a PFA in determining that this court properly concluded that the evidence was sufficient to establish that appellant "knowingly engaging in a

course of conduct or repeatedly committing acts toward" appellee another person, including "following [Appellee] without proper authority," and that appellant's actions placed appellee in reasonable fear of bodily injury. *See* 23 Pa.C.S.A. §6102(a) (5) and *see Thompson v. Thompson*, 2008 PA Super 285, 963 A.2d 474, 478 (Pa. Super.2008); *McCance v. McCance*, 908 A.2d 905 (Pa. Super.2006). Applying the proper standard of review, the appellate courts must determine that the evidence, when considered in the light most favorable to the appellee supports the PFA court's determination that appellant's conduct has created a reasonable fear of bodily harm and as such there is no error in the PFA court's determination.

The testimony presented at the PFA hearing, as discussed herein, establishes, by a preponderance of the evidence that appellant knowingly engaged in a course of conduct or repeatedly committing acts towards appellee, including following appellee, without proper authority, under circumstances which place appellee in reasonable fear of bodily Injury. Further, this court did not err in rendering a determination that the appellant acted in a manner such that appellee was in reasonable fear for his safety and that a PFA was necessary to ensure appellant's harassing conduct would not continue.

## CONCLUSION:

For all of the foregoing reasons, the trial court's order dated June 11, 2013 which granted petitioner/appellee's petition for a protection from abuse order against respondent/appellant should be affirmed.