J-S39045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: S.S.W., A MINOR | : | IN THE SUPERIOR COURT OF |
| IN RE: S.F.W., A MINOR | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.P.W., NOW S.P.W. | : | |
| AND M.J.W. | : | No. 464 WDA 2017 |

Appeal from the Order February 27, 2017
In the Court of Common Pleas of Somerset County
Orphans' Court at No(s):  No. 15 A Adoption 2014,
No. 15 Adoption 2014

BEFORE:   BENDER, P.J.E., BOWES, and STRASSBURGER[*], JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED AUGUST 04, 2017**

S.P.W. (Mother) and her husband, M.J.W. (Stepfather) (collectively,

Appellants), appeal from the order entered February 27, 2017, in the Court

of Common Pleas of Somerset County, which denied their petition to

terminate involuntarily the parental rights of J.M.W. (Father) to his minor

daughters, S.S.W., born in November 2010, and S.F.W., born in September

2012 (collectively, Children).   We reverse and remand for further

proceedings consistent with this Memorandum.

A prior panel of this Court summarized the relevant factual and

procedural history of this matter as follows.

> The orphans' court set forth its findings of fact in its opinion of
> November 13, 2014.  In relevant part, the court found that []

---

[*] Retired Senior Judge assigned to the Superior Court.

Children have been in sole custody of Mother since January 4, 2013. Father has not attempted contact with Mother or Children since then. Mother obtained an order pursuant to the Protection From Abuse (PFA) Act after a December 27, 2012 incident during which Father threatened to shoot himself in Mother's presence and also grabbed Mother's thigh, resulting in visible bruising. At a January 10, 2013 PFA hearing, Father consented to entry of an order without admitting the underlying facts. Pursuant to that order, Mother had sole physical and legal custody of [] Children and Father was not permitted any contact. Also, on January 10, 2013, Father sent flowers to Mother to apologize for his conduct. On January 19, 2013, Father took diapers for their baby to Mother's office and left them as Mother was out of town. For this attempted contact, police charged Father with indirect criminal contempt of the PFA order. Father pled guilty and received a 90–day suspended sentence.

Father participated in two months of counseling in April and May of 2013 for which a certificate of completion was provided to the Somerset County probation officer. Father also underwent faith-based pastoral counseling....

\*\*\*

The trial court extended the PFA order to January 10, 2016 because Father failed to appear at a December 12, 2013 PFA extension hearing. Father's employer denied his request for time off to attend the hearing and Father did not believe his appearance at the hearing would alter the result because he could not afford counsel. Father attempted to obtain counsel for the custody proceeding though Legal Aid, but Legal Aid declined assistance due to criminal charges pending against Father.

\*\*\*

On July 31, 2014, Appellants filed a petition seeking termination of Father's parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(1) and (b). At the conclusion of an October 3, 2014 hearing on the petition, the orphans' court found that Appellants failed to prove by clear and convincing evidence that termination of Father's parental rights was appropriate under § 2511(a)(1). The orphans' court entered an order to that effect on October 6, 2014, and Appellants filed a timely appeal.

- 2 -

*In re S.S.W.*, 125 A.3d 413, 414-15 (Pa. Super. 2015) (footnotes and citations omitted).

Despite the October 6, 2014 order denying Appellants' termination petition, Father failed to reconnect with Children. Father filed a complaint seeking custody of Children in October or November 2014, but the proceedings were stayed pending the outcome of Appellants' appeal. N.T., 1/26/2017, at 45, 80. Meanwhile, Father was incarcerated from December 2014 until November 2015, after pleading guilty to theft by unlawful taking. *Id.* at 64-65, 80; N.T., 10/3/2014, at 55. On September 24, 2015, this Court issued a published opinion affirming the October 6, 2014 order, which denied Appellants' first petition to terminate Father's parental rights.[1] *S.S.W.*, 125 A.3d at 418. However, Father made no further efforts to have contact with Children. N.T., 1/26/2017, at 84.

On April 22, 2016, Appellants again filed a petition to terminate Father's parental rights. The parties appeared for a termination hearing on January 26, 2017. On February 27, 2017, the orphans' court entered the order complained of on appeal, in which it denied Appellant's second

---

[1] The Honorable Sallie Updyke Mundy dissented, opining that the orphans' court erred in concluding that Father exercised reasonable firmness in resisting obstacles to maintaining his relationship with Children. *S.S.W.*, 125 A.3d at 418 (Mundy, J., dissenting).

termination petition.[2]  Appellants timely filed a notice of appeal on March 23,

2017, along with a concise statement of errors complained of on appeal.

Appellants now raise the following questions for our review.

(1) Whether the [orphans'] court erred in declining to terminate the parental rights of [Father]?

(2) Whether the [orphans'] court erred in not finding by clear and convincing evidence that [Father] had evidenced a settled purpose of relinquishing his parental rights or that he had failed or refused to perform parental duties for a period in excess of six [] months?

(3) Whether the [orphans'] court erred in not finding by clear and convincing evidence that the best interests of [C]hildren would be served by termination?

Appellants' Brief at 4 (suggested answers omitted).

We consider Appellants' claims mindful of our well-settled standard of

review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

_____

[2] The Honorable David C. Klementik presided over the parties' prior termination proceedings.  The Honorable Scott P. Bittner presided over the proceedings at issue here.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, Appellants petitioned to terminate Father's parental rights pursuant to subsections 2511(a)(1) and (b), which provides as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> > \*\*\*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

We first address Appellants' first and second issues, in which they argue that the orphans' court abused its discretion by declining to terminate Father's parental rights pursuant to subsection 2511(a)(1). Appellants' Brief at 8-18. Appellants argue that Father failed to perform parental duties, in that he took no action at all to maintain a relationship with Children after filing his custody complaint in 2014. *Id.*

To meet the requirements of subsection 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citing *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and

child" before moving on to analyze subsection 2511(b). *Id.* (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003)). Rather,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Id.* (citation omitted).

Critically, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012) (discussing *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975)).

In its opinion accompanying the order on appeal, the orphans' court explained its decision as follows.

> An initial review of the six-month period immediately preceding the filing of the Petition demonstrates that Father was incarcerated in the State Correctional System from December 2, 2014 until November 2, 2015. After being released from prison

on parole on November 2, 2015, Father resided in a halfway house in New Kensington, PA for approximately three months. One of the conditions of Father's sentence was that he not have contact with the victims of his crime, including Mother…. Of further significance is the fact that Father was the respondent in a PFA order that was effective from January 10, 2013 until January 10, 2016. The protected parties under the PFA order were Mother and Children and it was a "no contact" order. Therefore, until the PFA order expired on January 10, 2016, Father could not have any contact with Mother and Children for fear of violating the PFA order and being arrested for indirect criminal contempt. This served as a significant impediment to Father attempting to re-establish contact with his daughters for a substantial portion of the relevant six-month period.

Although it is acknowledged that Father did not attempt to contact Mother or Children between the period of January 10, 2016 and April 22, 2016, we find that under the circumstances and during this period of time that Father was attempting to get his life back in order so that he could once again pursue custody of Children…. Until he acquired employment with Verizon in late March/early April 2016, he struggled financially to pay his rent and utilities. Then the petition to terminate his parental rights was filed, which brought everything to a halt again.

It is also important to consider that in November 2014, after the first [involuntary termination of parental rights] hearing, Father filed a custody complaint seeking visitation rights. However, due to the pending appeal to the Superior Court, the custody proceeding was stayed. After the Superior Court disposed of the appeal, no further custody proceedings occurred because Father became incarcerated, and then moved into a halfway house. Following his release from the halfway house Father was attempting to secure stable employment before he again pursued custody of Children. These actions evidence Father's intent to not relinquish his parental claims to Children, and in fact, demonstrate his purpose of regaining parental contact with Children. Furthermore, the timing of the expiration of the PFA order and the filings of the petition leave a very small window, significantly less than six months, in which Father could have attempted to resume contact with Children….

Orphans' Court Opinion, 2/27/2017, at 7-9 (citations, footnotes, and unnecessary articles omitted; capitalization and party names altered).

Thus, the orphans' court found that Father did little, if anything, to perform parental duties on behalf of Children after the parties' custody proceeding was stayed in November 2014. Nevertheless, the court found Father's failure to perform parental duties excusable under the circumstances of this case. The court reasoned that the PFA order prevented Father from contacting Children until January 2016. In addition, the court was persuaded that Father intended to resume seeking custody of Children at some point in the future, once he got "his life back in order." ***Id.*** at 8.

While the record supports the court's factual findings, it is clear that the court misapplied the relevant principles of law. We first reject the court's conclusion that Father was excused from performing parental duties until the PFA order expired in January 2016. Courts are empowered to modify the conditions of a final PFA order upon petition by either party, and may even shorten the duration of a final PFA order. Pa.R.C.P. 1901.8 cmt. Here, our review of the record reveals that Father never attempted to modify the PFA order in order to have contact with Children.[3] While the PFA

_____

[3] The record does not indicate that Father petitioned for a modification of the PFA order as part of the 2014 custody proceedings. We observe that a trial court may not enter a custody order that conflicts with an existing PFA order, and that it is the PFA modification process "which may be utilized to

*(Footnote Continued Next Page)*

- 9 -

order was an obstacle which limited Father's ability to perform parental duties, Father made no effort to overcome that obstacle.[4] ***See B.,N.M.***, 856 A.2d at 855 (explaining that a parent must exercise reasonable firmness in resisting the obstacles which limit his or her ability to maintain a parent/child relationship).

We also reject the court's conclusion that Father's parental rights should not be terminated because he planned to seek custody of Children after he got "his life back in order." Orphans' Court Opinion, 2/27/2017, at 8. It is well-settled that "[p]arental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." ***B.,N.M.***, 856 A.2d at 855 (citing ***In re D.J.S.***, 737 A.2d 283, 287 (Pa.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

determine whether a more liberal custody/visitation [o]rder may become operative." ***Lawrence v. Bordner***, 907 A.2d 1109, 1113-14 (Pa. Super. 2006) (quoting ***Dye for McCoy v. McCoy***, 621 A.2d 144, 145-46 (Pa. Super. 1993)).

[4] We recognize that in affirming the orphans' court denial of Appellants' first termination of parental rights position, this Court noted the finding of the orphans' court that Father "legitimately believed" that he was unable to attempt to modify the PFA to permit contact with Children without risking being held in contempt of the PFA. ***S.S.W.***, 125 A.3d at 417. While Father's belief may have been legitimate during the pertinent timeframe prior to the first petition, the same cannot be said once Father received the orphans' court opinion denying the first petition. ***See id.*** (quoting Orphans' Court Opinion, 11/13/2014, at 13 ("It is the court's sense that [Father] has suffered throughout his custody and PFA matters from lack of competent counsel to educate him that the PFA order regarding custody could be modified to allow him to reframe a custodial relationship with [Children].")).

Super. 1999)). The fact that Father intended to seek custody at some unknown time in the future does not excuse his failure to take action for the approximately year and a half preceding the filing of Appellants' termination petition, all while Children were being raised by Appellants. Accordingly, the orphans' court erred in holding that Appellants failed to meet their burden under subsection 2511(a)(1).

We now turn to Appellants' third issue on appeal, in which they argue that the court abused its discretion by declining to terminate Father's parental rights pursuant to subsection 2511(b). Appellants' Brief at 19-20. Appellants argue that Children do not remember Father and would be harmed by having him reenter their lives. *Id.*

Upon review, the orphans' court did not include an analysis of subsection 2511(b) in its opinion, based on its conclusion that Father's parental rights should not be terminated pursuant to subsection 2511(a)(1). Because this Court may not make independent factual findings, we must remand this case to the orphans' court for an analysis of subsection 2511(b). *See In re Adoption of M.R.B.*, 25 A.3d 1247, 1260 n.6 (Pa. Super. 2011) (remanding for an analysis of subsection 2511(b) because, "[a]s an error correcting court, we cannot encroach upon the orphans' court's purview as the ultimate trier of fact in order to resolve this case during the instant appeal"). Accordingly, we reverse the court's February 27, 2017 order denying Appellants' termination petition pursuant to

- 11 -

subsection 2511(a)(1), and we remand this matter for the court to conduct an analysis pursuant to subsection 2511(b). After the court conducts its analysis, it must enter a new order granting or denying Appellants' petition to terminate Father's parental rights. We observe that the parties presented extensive evidence concerning Children's needs and welfare during the termination hearing on January 26, 2017. Thus, the court need not conduct any further hearings, but may rely on the record before it when reaching its decision.

Order reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/4/2017