J-A24016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| REBECCA STOKES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID STOKES | : | No. 597 MDA 2025 |

Appeal from the Order Entered April 3, 2025
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2025-2556


BEFORE:  DUBOW, J., KUNSELMAN, J., and BECK, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: NOVEMBER 13, 2025**

Appellant, Rebecca Stokes ("Mother"), appeals from the April 3, 2025 order entered in the Luzerne County Court of Common Pleas that denied the petition for protection from abuse ("PFA") that she filed on behalf of J.S. ("Child") against her ex-husband, David Stokes ("Father"), pursuant to the PFA Act, 23 Pa.C.S. §§ 6101-6122.  Upon careful review, we affirm.

The relevant factual and procedural history is as follows.  Mother and Father have shared custody of 11-year-old Child.  They have a long history of litigation in the Luzerne County Family Court system, appearing for custody, dependency, and PFA proceedings.  On October 24, 2024, Mother filed a PFA petition against Father in **Luzerne** County alleging that Father 1) kicked Child during a custody exchange and 2) chased Child around the house with a knife ("First PFA Petition").  On October 24, 2024, after a hearing, the trial court denied the First PFA Petition after hearing Child's testimony that 1) she was

not sure if Father kicked her on purpose during the custody exchange when he was pulling her to the car and 2) she knew Father was joking and acting like a character from a horror movie when he chasing her with the knife. Trial Ct. Op., 6/16/25, at 8, 14. On February 7, 2025, Mother filed a PFA Petition on behalf of Child in **Lackawanna** County alleging that Father 1) kicked Child during a custody exchange; 2) chased Child around the house with a knife; 3) put a gun to their dog's head in front of Child; and 4) kicked a cat down the stairs ("Second PFA Petition"). Prompted by Mother, Child wrote the Second PFA Petition in her own handwriting. During the initial PFA hearing, Mother's counsel argued that Child recanted her testimony from the First PFA Petition, which is why they included the same incidents in the Second PFA Petition. The trial court granted a temporary PFA and, upon motion from Father's counsel, transferred the case back to Luzerne County. The trial court held a hearing and took judicial notice of the October 24, 2024 PFA proceedings. The court heard testimony from Mother, Father, and *in camera* testimony from Child.

In sum, Father denied pointing a gun at the dog's head. Father testified that he was coming back from hunting and grocery shopping, entered the home with grocery bags and his rifle under his arm, the dog was jumping up on him, and he made a down motion with the gun and told the dog to sit. Father also denied kicking the cat. Father testified that he often stomps on the floor to scare the cat and make the cat run downstairs so that he can close the bedroom doors before he leaves the house. The court found Father's testimony to be credible. Trial Ct. Op. at 18.

During her *in camera* interview, Child testified, *inter alia*, that during the last PFA hearing she "was scared to tell [the Judge] that dad did kick me" and that she was scared to be around Father. N.T. Hearing, 4/3/25, at 55, 62-63, 68, 86. The court found Child's testimony to be "coached" and not credible. Trial Ct. Op. at 20.

The court denied the Second PFA Petition. Mother appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

Mother raises the following issues for our review:

I.      Based on [] Child recanting her previous testimony about the kick and having the video in court on March 16, 2025, did the trial court abuse its discretion or err by not watching the video nor allowing Mother to go forward with her evidence?

II.     Did the trial court abuse[] its discretion by relying on evidence outside of the record of the PFA hearing, thereby violating the due process rights of [Mother]?

III.    Did the trial court err in denying the PFA petition by failing to adequately consider whether [] Father's conduct constituted a course of conduct placing Child in reasonable fear of bodily injury?

IV.     Did the trial court improperly allow[] bias to influence its assessment of Child's credibility regarding the kicking incident, thereby undermining the fairness of the PFA determination under 23 [Pa.C.S.] § 6303?

V.      Did the trial court abuse its discretion by applying *res judicata* to the October 19, 2024 kicking incident, improperly relying on testimony from a past hearing and the custody hearing to discredit [] Child's credibility?

Mother's Br. at 9 (some capitalization omitted; reordered for ease of disposition).

- 3 -

In a PFA action, this Court reviews the trial court's legal conclusions for an error of law or an abuse of discretion. *Custer v. Cochran*, 933 A.2d 1050, 1053-54 (Pa. Super. 2007) (*en banc*). A trial court does not abuse its discretion for a mere error of judgment; rather, we will find an abuse of discretion "where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill will." *Mescanti v. Mescanti*, 956 A.2d 1017, 1019 (Pa. Super. 2008) (citation omitted). Moreover, on appeal, this Court will defer "to the credibility determinations of the trial court as to witnesses who appeared before it." *Karch v. Karch*, 885 A.2d 535, 537 (Pa. Super. 2005) (citation omitted). It is well-settled that "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Walsh*, 36 A.3d 613, 619 (Pa. Super. 2012) (citation omitted). Finally, we review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court. *Snyder v. Snyder*, 629 A.2d 977, 982 (Pa. Super. 1993).

The purpose of the PFA Act is "to protect victims of domestic violence from those who perpetrate such abuse" and "its primary goal is advance prevention of physical and sexual abuse." *Lawrence v. Bordner*, 907 A.2d 1109, 1112 (Pa. Super. 2006) (citation and internal quotation marks omitted). "[T]he [PFA] Act does not seek to determine criminal culpability. A [p]etitioner is not required to establish [that] abuse occurred beyond a reasonable doubt,

but only to establish it by a preponderance of the evidence." ***Snyder***, 629 A.2d at 982. A "preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." ***Raker v. Raker***, 847 A.2d 720, 724 (Pa. Super. 2004).

"In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury" and the intent of the alleged abuser "is of no moment." ***Id.*** at 725. Since the PFA Act's goal is to prevent abuse, a victim does not have to wait for abuse to occur for the Act to apply. ***K.B. v. Tinsley***, 208 A.3d 123, 128 (Pa. Super. 2019)

Past conduct can be relevant to this consideration. ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1262-63 (Pa. Super. 2008). In her first issue, Mother avers that the trial court abused its discretion by not viewing the October 19, 2024 video depicting the custody exchange where Father allegedly kicked Child. Mother's Br. at 23.

"Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present." ***Buchhalter***, 959 A.2d at 1263 (citations omitted). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or unduly prejudicial to the complaining party." ***K.B.***, 208 A.3d at 130 (citations omitted).

Here, the trial court explained that Mother failed not only to authenticate the video, but also failed to officially mark and move it into evidence as an exhibit. More importantly, Mother's counsel represented to the court that the video was altered. In particular, the trial court opined:

> Although there was much discussion about the video in the March 1[6], 2025 hearing, there was never a formal offer of that video into evidence. Even more importantly, at the continued hearing held on April 3, 2025, [Mother]'s counsel made the following offer, "I know Your Honor didn't have a chance to see that video last time and I do have it today. It's a slowed down, clarified version. I'm making a motion to reconsider that video." [N.T. Hearing, 4/3/25, at 4-5]. . .The fact that Mother sought to introduce an altered video mitigates against its admissibility.

Trial Ct. Op. at 6-7. Our review of the record confirms that Mother's counsel proffered that he had a "slowed down and clarified" version of the video which prompted counsel and the trial court to engage in a discussion of whether evidence could come in regarding the First PFA Petition. However, Mother's counsel never formally offered the video into evidence. Accordingly, the trial court did not abuse its discretion when it failed to admit the October 19, 2024 video into evidence.

In her next four issues, Mother raises claims of error that she failed to include in her Rule 1925(b) statement. *See* Rule 1925(b) Statement, 5/9/25, ¶¶ 1-10. It is axiomatic that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1924(b)(4)(vii). *See also B.K.P. v. J.R.B.*, 303 A.3d 456, 460 (Pa. Super. 2023) (explaining that issues challenging the court's grant of

a PFA order that were not raised in appellant's Rule 1925(b) statement were waived). Although Mother's Rule 1925(b) Statement included ten very detailed claims of error, she failed to include the specific claims of error that she now raises in issues two through five in her brief to this court. Thus, Mother failed to preserve these issues for our review.[1]

Even if issues two through five were preserved, they would fail to garner relief. In issue two, Mother claims that the trial court erred when it relied on evidence outside the record, namely evidence from the custody case. Mother's Br. at 16-23. In a custody proceeding, there is no error where "[t]he prior testimony was incorporated in the proceedings without objection, which is an intelligent and efficient way to proceed, particularly when the same trial judge presided over the prior hearings." *Jones v. Jones*, 884 A.2d 915, 916–17 (Pa. Super. 2005). Moreover, persuasive authority guides that where "the PFA proceedings were tightly intertwined with the ongoing custody litigation [,]" then "the trial court did not err in incorporating the relevant procedural history of the custody proceedings into [its] decision in [the PFA] case." *Jones v. Jones*, 277 A.3d 1160, *5 (Pa. Super. 2022) (non-precedential memorandum).

---

[1] Mother asserts that some of her issues were not readily discernible until the trial court issued its Rule 1925(a) opinion. Mother's Br. at 17 n.3. Our Rules of Appellate Procedure clearly state "[i]f the appellant in a civil case cannot readily discern the basis for the judge's decision, the appellant shall preface the Statement with an explanation as to why the Statement has identified the errors in only general terms. In such a case, the generality of the Statement will not be grounds for finding waiver." Pa.R.A.P. 1925(b)(4)(vi). Mother failed to do this.

Here, the court took judicial notice of prior PFA filings without objection and referenced the custody proceedings in its Rule 1925(a) opinion but did not necessarily rely on evidence from the proceedings to render its decision. *See* N.T. Hearing, 4/3/25, at 22. Thus, even if Mother had preserved this issue in her Rule 1925(b) statement, we would conclude that the court did not abuse its discretion in considering the challenged evidence.

In the third and fourth issues raised in her brief, Mother challenges the weight of the evidence and the trial court's credibility determinations. Mother's Br. at 26-30. Our review of the record supports the trial court's findings. Trial Ct. Op. at 5-21. Moreover, this Court may not reweigh the evidence or usurp the trial court's credibility determinations. *K.B.*, 208 A.3d at 129. Therefore, even if Mother preserved these issues in her Rule 1925(b) statement, we would decline to find error.

Finally, in issue five, Mother alleges that the trial court abused its discretion in applying *res judicata* "to the October 19, 2024 kicking incident," relying on prior testimony to discredit the Child, and in preventing "the 11-year-old witness[2] from testifying." Mother's Br. at 30-32. Not only did Mother fail to include this issue in her Rule 1925(b) Statement, she fails to cite to the record in her argument. Accordingly, even if this issue was preserved in her Rule 1925(b) statement, we would find it waived. *See Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018) ("We shall not develop an

---

[2] It is unclear if Mother is referring to Child, or Child's friend who allegedly witnessed the October 19, 2024 kicking incident.

argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem issue to be waived.").

In sum, the trial court did not abuse its discretion when it failed to view the altered October 19, 2024 video that Mother never marked and never attempted to move into evidence. Moreover, Mother failed to preserve her remaining issues for appellate review by failing to include them in her Rule 1925(b) statement. Even if Mother had preserved these issues, when reviewing the evidence of record in the light most favorable to Father as the prevailing party, together with all reasonable inferences, we find no abuse of discretion in the trial court's denial of Mother's Second PFA Petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/13/2025