J-A24013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| D.E. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.E. | : | |
| | : | |
| Appellant | : | No. 630 MDA 2018 |

Appeal from the Order Entered March 14, 2018
In the Court of Common Pleas of Lancaster County
Domestic Relations at No(s): CI-18-00759

BEFORE: OTT, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 26, 2019**

A.E. ("Husband") appeals from the trial court's March 14, 2018, order, entering a final one-year protection from abuse ("PFA")[1] order in favor of D.E. ("Wife"), which was an agreement without an admission of abuse. Husband now complains that he agreed to the PFA order under duress and he was not properly advised of the immigration consequences of the agreement. Based on the following, we affirm.

The relevant facts and procedural history are taken from the trial court's May 2, 2018, opinion and our independent review of the certified record. Husband and Wife have been married since 1989, and both are in the process of applying with immigration services for permanent resident cards or Green

_____

[1] **See** 23 Pa.C.S. §§ 6101–6122.

Card status.  Wife filed a *pro se* petition for a temporary PFA order, which was granted on January 30, 2018.  A hearing was held on February 2, 2018.  At that time, Wife attended without counsel and requested a continuance to obtain a lawyer, which was granted by the court.  Both parties then appeared for a hearing on March 13, 2018,[2] where they informed the court they had reached an agreement regarding the terms of the PFA order.  The following day, the court entered a final one-year PFA order by agreement without an admission of abuse ("Agreement") against Husband.  This timely appeal followed.[3]

Initially, we note the following:

> [I]n a PFA action, we review the trial court's legal conclusions for an error of law or abuse of discretion. ***Lawrence v. Bordner***, 2006 PA Super 246, 907 A.2d 1109, 1112 (Pa. Super. 2006).  In ***Commonwealth v. Widmer***, 560 Pa. 308, 322, 744 A.2d 745, 753 (2000), our Supreme Court defined "abuse of discretion" in the following way:
>
>> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, with the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge.  Discretion must be exercised on the foundation of reason, as

---

[2]  Counsel for both parties informed the court that a translator was not necessary at the hearing.  N.T., 3/13/2018, at 2.

[3]  On April 13, 2018, the trial court ordered Husband to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Husband filed a concise statement on April 26, 2018.  The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 2, 2018.

> opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.
>
> **Id.** at 322, 744 A.2d at 753 (quoting **Coker v. S.M. Flickinger Co., Inc.**, 533 Pa. 441, 447, 625 A.2d 1181, 1184-85 (1993)).
>
> **Custer v. Cochran**, 2007 PA Super 290, 933 A.2d 1050, 1053-54 (Pa. Super. 2007) (*en banc*).  Credibility of the witnesses and the weight accorded their testimony is within the exclusive province of the judge as fact finder.  **Karch v. Karch**, 2005 PA Super 342, 885 A.2d 535, 537 (Pa. Super. 2005) (citation omitted).

**Mescanti v. Mescanti**, 956 A.2d 1017, 1019-1020 (Pa. Super. 2008).[4]

In his first issue, Husband claims he agreed to the March 14, 2018, PFA order under duress.  **See** Husband's Brief at 15.  Specifically, he alleges:

> [Husband] was currently in the process of applying for his green card when [Wife] filed the temporary Protection from Abuse order. [Husband] asked for a continuance during his first hearing with the Honorable Judge Conrad and subsequently retained Daniel Bardo.  Prior to the second hearing on March 13, 2018, Daniel Bardo was in contact with Lorraine Hagy, counsel for [Wife]. During this time, [Husband] states that [Wife] alluded to reporting him to [Immigration and Customs Enforcement ("ICE")] should he refuse to sign the agreement.

---

[4]  "This Court has emphasized that '[t]he purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse.'"  **T.K. v. A.Z.**, 157 A.3d 974, 976 (Pa. Super. 2017), *quoting* **Buchhalter v. Buchhalter**, 959 A.2d 1260, 1262 (Pa. Super. 2008).

Courts in Pennsylvania have held that "pressure and negotiations" does not rise to a level of coercion which necessitates a finding of duress. *Lugg v. Lugg*, 2013 Pa. Super 67, 64 A.3d 1109 (2013). Additionally, in *Adams v. Adams*, the court held that "stress and anxiety" do not rise to the level of duress, *Adams. V. Adams*, 414 Pa. Super 116), 848 A.2d 1991 (1992). However, [Wife]'s threats to report [Husband] to ICE due to his legal status should qualify for duress under Pennsylvania law because these threats placed [Husband] in extraordinary fear of detention, removal or another restriction on his ability to stay in the United States legally with his children. Given the politicized nature of immigration and an immigrant's particularly vulnerable position within society, such a threat can be absolutely devastating and rises well past the threshold of stress and anxiety. Such a threat would have put [Husband] in fear of his liberty, his livelihood, and his ability to see his children.

[Husband] was thus placed under extraordinary duress during the proceedings related to the PFA and as such the final order should be vacated.

Husband's Brief at 15-17.

We are guided by the following: "A decree entered by consent of the parties is so conclusive that it will be reviewed only on a showing that an objecting party's consent was obtained by fraud or that it was based upon a mutual mistake." *Lee v. Carney*, 645 A.2d 1363, 1365 (Pa. Super. 1994) (citation omitted). The Pennsylvania Supreme Court has defined "duress" as follows:

[T]hat degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness.... The quality of firmness is assumed to exist in every person competent to contract, unless it appears that by reason of old age or other sufficient cause he is weak or infirm.... Where persons deal with each other on equal terms and at arm's length, there is a presumption that the person alleging duress possesses ordinary firmness.... Moreover, **in the absence of threats of**

**actual bodily harm there can be no duress where the contracting party is free to consult with counsel**....

***Degenhardt v. Dillon Co.***, 669 A.2d 946, 950 (Pa. 1996) (emphasis added),

*quoting **Carrier v. William Penn Broadcasting Co.***, 233 A.2d 519, 521 (Pa.

1967). ***See also Lugg v. Lugg***, 64 A.3d 1109, 1113 (Pa. Super. 2013).

> Here, the trial court found the following:
>
> At the Hearing, the court questioned [Husband] concerning the entry of the Agreement as follows:
>
> > THE COURT: Sir, you have also heard your attorney outline the parameters of this. There would be a one-year agreement and that you couldn't harass, stalk or intimidate your wife in any way. Stay away from her. And that you would be able to have contact if there was a need to at an immigration hearing if that came up.
> >
> > [Husband]: Correct.
> >
> > THE COURT: Of course, you would have to [be] proper in every way at that time. Do you understand that?
> >
> > [Husband]: Yes.
> >
> > THE COURT: Otherwise, it would be a violation.
> >
> > [Husband]: Yes.
> >
> > THE COURT: And you're in agreement with this as well, correct?
> >
> > [Husband]: Correct.
>
> Notes of Transcript, March 13, 2018, p. 5 - 6. [Husband] expressed no duress to the court. The court assessed [Husband]'s demeanor during the hearing, and he did not appear to be under any duress.

Trial Court Opinion, 5/2/2018, at 2.

We agree with the trial court's determination. Other than bald assertions of duress, Husband fails to present any evidentiary proof of Wife's alleged threats to support his claim. Moreover, "in the absence of threats of actual bodily harm[,] there can be no duress" because Husband was free to consult with his attorney prior to entering into the PFA agreement. **Degenhardt**, 669 A.2d at 950. Lastly, Husband's credibility and the weight of his testimony was "within the exclusive province of the judge as fact finder," and the judge found that Husband did not appear to be under duress at the time of the March 13, 2018, hearing. **Karch**, 885 A.2d at 537. We are bound by that credibility determination. **See id.** Accordingly, Husband's first claim fails.

Next, Husband complains that he was not properly advised of the immigration consequences of the PFA order. **See** Husband's Brief at 17. He states:

> [Husband]'s prior counsel did not fully advise [Husband] of the immigration consequences of the PFA order. While prior counsel did state on the record that he had been advised, this advice came from a brief conversation between [prior counsel] and [new counsel] prior to [new counsel]'s retention for this appeal. During that exchange, [prior counsel], in a single sentence, asked [new counsel] if there were any immigration consequences to a PFA. [New counsel], not knowing the context or the background of the case, answered no.
>
> In **Padilla v. Kentucky**, the Supreme Court decided that criminal defense attorneys must advise immigrants or noncitizen clients about the immigration consequences of criminal convictions. **Padilla v. Kentucky**, 559 U.S. 356 (2010). While [Husband] recognizes that a PFA is a civil matter, there are criminal consequences to a violation of a PFA, and an agreement

without admission would still have to be disclosed at any adjustment interview related to the acquisition of a green card. This admission could have potentially disastrous consequences, if the officer conducting the interview decided that this was a disqualifying issue related to good moral character. As an officer is allowed to take a holistic and discretionary approach in adjustment or naturalization interviews, a negative finding for adjustment based off a PFA, even without a violation, is entirely possible.

Here, [Husband] was simply not informed of any immigration consequences. His prior counsel only conducted a single-sentence inquiry into any possible immigration consequences and did not thoroughly investigate the possible outcomes of an agreement without admission related to a PFA.

Husband's Brief at 17-18.

At the March 13, 2018, hearing, after the trial court informed Husband of the requirements regarding the PFA order, the following exchange took place:

[Counsel]: Judge, may I add something to the record?

I have advised my client that, if he were to violate and be found guilty at an indirect criminal contempt hearing, that would cause immigration problems.

THE COURT: Very good. All right.

As counsel outlined here, he believes that there is no problem with Immigration relative to this PFA. But that if you did violate the order, that would then potentially get criminal sanctions and that could affect your immigration status.

N.T., 3/13/2018, at 6.

In its Rule 1925(a) opinion, the trial court found the following:

While both parties referred to their respective immigration statuses during the course of the Hearing, [Husband] did not apprise the court of exact nature of his immigration status. The

- 7 -

court is therefore unaware of how [Husband]'s immigration status is affected by the entry of the Agreement. Nor is the court aware of any authority requiring the court to inquire into a litigant's immigration status and the effect of any agreement thereon. Finally, it remains unclear to the court how entry of this Agreement could affect [Husband]'s immigration status. [Husband] has not been convicted of a violation of the order, which could lead to deportation. **See** 8 U.S.C.A. § 1227(a)(2)(E)(ii). Nor did the court make a finding of abuse, which could affect an assessment of [Husband]'s moral character. **See** 8 U.S.C.A. § 1427(a).

Although [Husband] does not use these words, this issue could be construed as raising a claim for ineffective assistance of counsel. [Husband] was represented by counsel, and [Husband]'s counsel placed on the record the following:

> [Counsel]: I have advised my client that, if he were to violate and be found guilty at an indirect criminal contempt hearing, that would cause immigration problems.

Notes of Transcript, March 13, 2018, p. 6. However, even supposing counsel's admonition to [Husband] was ineffective, the Commonwealth does not recognize the right to effective representation in Protection from Abuse Cases. Pennsylvania law recognizes only two distinct categories of cases where [litigants] have a right to effective counsel: (1) where the right to counsel is statutorily mandated; and (2) where the defendant could be deprived of substantial or fundamental right under either the US or Pennsylvania Constitutions. **Weir v. Weir**, 631 A.2d 650, 656 (Pa. Super. 1993). **See also** U.S. Const. amend. VI, XIV; Pa. Const. Art. 1 § 9.

The Protection from Abuse Act does not create a legislative right to court–appointed counsel, although it requires the court to advise a defendant that he has the right to be represented. **See** 23 Pa.C.S.A. § 6107(a); **Weir v. Weir**, 631 A.2d at 657. Nor does Pennsylvania law recognize PFA cases as having the potential to deprive defendants of substantial or fundamental rights. In **Varner v. Holley**, [the] Superior Court interpreted the case of **Weir v. Weir** as holding that protection proceedings are "not the type of proceeding which involves the deprivation of a constitutional right so as to require the appointment of counsel." **Varner v. Holley**, 854 A.2d 520, 523 (Pa. Super. 2004) citing

> ***Weir v. Weir***, 631 A.2d at 657. This is not simply because PFA proceedings are civil in nature. In ***Banks v. Randle***, the Superior Court noted that defendants in civil paternity actions had a right to counsel because an adjudication of paternity may result in a future imprisonment should the defendant willfully fail to pay support. ***Banks v. Randle***, 486 A.2d 974, 976 (Pa. Super. 1984). At first blush, PFA cases appear similar. Should a defendant violate a PFA order and be convicted on a count of indirect criminal contempt ("ICC"), he faces a potential term of imprisonment up to six months. 23 Pa.C.S.A. § 6114(b)(1)(i). However, in actions for support, defendants have no right to counsel. ***Karch v. Karch***, 879 A.2d 1272, 1274 (Pa. Super. 2005). In ICC actions, defendants have a legislatively created right to an attorney. 23 Pa.C.S.A. § 6114(b)(3). So, while a defendant has no right to representation at his PFA hearing, he is entitled to effective counsel at a subsequent ICC hearing which may result in the loss of physical liberty.

> The Protection from Abuse Act does not legislate the right to counsel. Nor have the appellate courts in Pennsylvania found the Act to deprive defendants of substantial or fundamental rights. Therefore, PFA proceedings fall into neither of the categories where Pennsylvania courts recognize a right to effective counsel. While this court concedes it is possible that [Husband]'s attorney failed to advise him of the full effect of the Agreement on his immigration status, this still does not provide an appropriate basis for appellate relief.

Trial Court Opinion, 5/2/2018, at 3-5.

We agree with the trial court's sound rationale, and therefore, affirm on this basis with regard to this claim. We emphasize that Husband has not demonstrated how the entry of the PFA order has detrimentally affected his immigration status, other than pointing to ***Padilla***, ***supra***, which concerns the immigration consequences of criminal convictions. Husband does not allege that he has been criminally convicted as a result of the final PFA order. Therefore, ***Padilla*** is inapplicable. Moreover, at the March 13, 2018, hearing,

counsel specifically advised Husband that "if he were to violate and be found guilty at an indirect criminal contempt hearing, that would cause immigration problems." N.T., 3/13/2018, at 6. Furthermore, to the extent Husband raises an ineffective assistance of counsel claim, we agree with the court that pursuant to **Weir**, **supra**, and **Varner**, **supra**, there is no constitutional right to the appointment of counsel in a PFA proceeding, and consequently, there can be no derivative ineffectiveness claim. Accordingly, Husband's second claim also fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/26/2019

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - CUSTODY

DIANA ERININA, :
      Plaintiff, :
       :
       :
      vs. : No. CI-18-00759
       :
ALEKSANDAR ERININ, :
      Defendant. :

### 1925 OPINION

AND NOW, this 2nd day of May, 2018, upon the Defendant/Appellant, Aleksandar

Erinin's timely notice of appeal and concise statement of matters complained of on appeal, the

court files this opinion in accordance with Pennsylvania Rule of Civil Procedure 1925(a)(1).

### I. PROCEDURAL HISTORY

Appellee, Diana Erinina, filed a *pro se* petition for a temporary protection from abuse

order. This was granted on January 30, 2018. A hearing was scheduled for February 2, 2018.

Appellant attended with counsel. Appellee attended without counsel and requested a

continuance. This was granted by the court. Both parties appeared for a hearing on March 13,

2018 ("Hearing"), but they ultimately reached an agreement. This was entered as a final order on

March 14, 2018, as an agreement without an admission of abuse ("Agreement"). Appellant filed

his timely notice of appeal on April 12, 2018. The court filed an order pursuant Pa.R.C.P.

1925(b) on April 13, 2018. Appellant filed his concise statement of errors on April 26, 2018.

This opinion follows.

### II. STATEMENT OF FACTS

The court did not develop a factual record in this matter. At the Hearing, counsel for the

parties indicated they had agreed to the entry of a one-year, final order without an admission of

1

abuse. Counsel placed the terms of this Agreement on the record. The parties expressed their agreement with those terms, and the court entered a final order.

## III.   DISCUSSION

Appellant raises two issues in his statement of matters complained of on appeal. The court addresses each in turn.

> A. <u>Defendant agreed to the entry of the March 14, 2018 Protection from Abuse Order under duress.</u>

At the Hearing, the court questioned the Appellant concerning the entry of the Agreement as follows:

> THE COURT: Sir, you have also heard your attorney outline the parameters of this. There would be a one-year agreement and that you couldn't harass, stalk or intimidate your wife in any way. Stay away from her. And that you would be able to have contact if there was a need to at an immigration hearing if that came up.
>
> [APPELLANT]: Correct.
>
> THE COURT: Of course, you would have to proper in every way at that time. Do you understand that?
>
> [APPELLANT]: Yes.
>
> THE COURT: Otherwise, it would be a violation.
>
> [APPELLANT]: Yes.
>
> THE COURT: And you're in agreement with this as well, correct?
>
> [APPELLANT]: Correct.

Notes of Transcript, March 13, 2018, p. 5 – 6. Appellant expressed no duress to the court. The court assessed Appellant's demeanor during the hearing, and he did not appear to be under any duress.

2

RR 10

B. [Appellant] was not properly advised of how the disposition of the instant case would affect his immigration status.

While both parties referred to their respective immigration statuses during the course of the Hearing, Appellant did not apprise the court of exact nature of his immigration status. The court is therefore unaware of how Appellant's immigration status is affected by the entry of the Agreement. Nor is the court aware of any authority requiring the court to inquire into a litigant's immigration status and the effect of any agreement thereon. Finally, it remains unclear to the court how entry of this Agreement could affect Appellant's immigration status. Appellant has not been convicted of a violation of the order, which could lead to deportation. See 8 U.S.C.A. § 1227(a)(2)(E)(ii). Nor did the court make a finding of abuse, which could affect an assessment of Appellant's moral character. See 8 U.S.C.A. § 1427(a).

Although Appellant does not use these words, this issue could be construed as raising a claim for ineffective assistance of counsel. Appellant was represented by counsel, and Appellant's counsel placed on the record the following:

> [Counsel]: I have advised my client that, if he were to violate and be found guilty at an indirect criminal contempt hearing, that would cause immigration problems.

Notes of Transcript, March 13, 2018, p. 6. However, even supposing counsel's admonition to Appellant was ineffective, the Commonwealth does not recognize the right to effective representation in Protection from Abuse Cases. Pennsylvania law recognizes only two distinct categories of cases where litigates have a right to effective counsel: (1) where the right to counsel is statutorily mandated; and (2) where the defendant could be deprived of substantial or fundamental right under either the US or Pennsylvania Constitutions. Weir v. Weir, 631 A.2d 650, 656 (Pa. Super. 1993). See also U.S. Const. amend. VI, XIV; Pa. Const. Art. 1 § 9.

3

RR11

The Protection from Abuse Act does not create a legislative right to court-appointed counsel, although it requires the court to advise a defendant that he has the right to be represented. See 23 Pa.C.S.A. § 6107(a); Weir v. Weir, 631 A.2d at 657. Nor does Pennsylvania law recognize PFA cases as having the potential to deprive defendants of substantial or fundamental rights. In Varner v. Holley, Superior Court interpreted the case of Weir v. Weir as holding that protection proceedings are "not the type of proceeding which involves the deprivation of a constitutional right so as to require the appointment of counsel." Varner v. Holley, 854 A.2d 520, 523 (Pa. Super. 2004) citing Weir v. Weir, 631 A.2d at 657. This is not simply because PFA proceedings are civil in nature. In Banks v. Randle, the Superior Court noted that defendants in civil paternity actions had a right to counsel because an adjudication of paternity may result in a future imprisonment should the defendant willfully fail to pay support. Banks v. Randle, 486 A.2d 974, 976 (Pa. Super. 1984). At first blush, PFA cases appear similar. Should a defendant violate a PFA order and be convicted on a count of indirect criminal contempt ("ICC"), he faces a potential term of imprisonment up to six months. 23 Pa.C.S.A. § 6114(b)(1)(i). However, in actions for support, defendants have no right to counsel. Karch v. Karch, 879 A.2d 1272, 1274 (Pa. Super. 2005). In ICC actions, defendants have a legislatively created right to an attorney. 23 Pa.C.S.A. § 6114(b)(3). So, while a defendant has no right to representation at his PFA hearing, he is entitled to effective counsel at a subsequent ICC hearing which may result in the loss of physical liberty.

The Protection from Abuse Act does not legislate the right to counsel. Nor have the appellate courts in Pennsylvania found the Act to deprive defendants of substantial or fundamental rights. Therefore, PFA proceedings fall into neither of the categories where Pennsylvania courts recognize a right to effective counsel. While this court concedes it is

4

possible that Appellant's attorney failed to advise him of the full effect of the Agreement on his immigration status, this still does not provide an appropriate basis for appellate relief.

## IV.   CONCLUSION

Based on the foregoing, the court is not aware of any reason the Final Protection from Abuse order, entered by agreement without admission, should be overturned.

BY THE COURT:

JEFFREY A. CONRAD, JUDGE

ATTEST: _____

COPIES TO: Lorraine Russell Hagy, Esq.
Wendy Chan, Esq.

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO: 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 5-3-18

