J-A06015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| D.J.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.H.B. | : | |
| | : | |
| Appellant | : | No. 791 MDA 2018 |

Appeal from the Order Entered April 13, 2018
In the Court of Common Pleas of York County
Civil Division at No(s):  2017-FC-000856-12

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI*, J.

MEMORANDUM BY OTT, J.:                          **FILED AUGUST 26, 2019**

J.H.B. ("Husband") appeals from the trial court's April 13, 2018 order, entering a final three-year protection from abuse ("PFA")[1] order in favor of D.J.H. ("Wife").  Husband now complains that the grant of the PFA order was because of judicial bias, that the evidence was insufficient to sustain the grant of a PFA order and/or that the trial court's decision was against the weight of the evidence, and that the trial court erred in evicting him from the marital residence.  Based on the following, we affirm.

We take the relevant facts and procedural history from the trial court's June 15, 2018 opinion and our independent review of the certified record.  The

---

* Retired Senior Judge assigned to the Superior Court.

[1] **See** 23 Pa.C.S.A. §§ 6101–6122.

parties live separately and are currently undergoing divorce proceedings. As of March 2018, Husband resided in the marital residence, while Wife resided with her elderly mother, who lived across the street. A conference concerning Husband's petition for exclusive possession of the marital residence, filed in case number 2017-FC-000856-15, took placed on March 27, 2018, in front of the Honorable Kathleen J. Prendergast.

On April 2, 2018, Wife sought and was granted a temporary PFA order. Judge Prendergast was York County's assigned duty judge for bench warrants and *ex parte* hearings that week. She scheduled a hearing on a final PFA petition for April 12, 2018, in front of a different judge. On April 3, 2018, Husband filed a motion for reconsideration, which the trial court denied.

York County employs a modified version of the one-judge one-family rule, keeping all matters related to one family in front of the same judge. Thus, when Judge Prendergast had an unexpected opening in her schedule, she heard the hearing on the grant of a final PFA order on April 12 and 13, 2018.

At the hearing, Wife testified to the events that caused her to seek a PFA order. Specifically, she stated that, on Thursday, March 29, 2018, at approximately 5:00 p.m., Wife left her home to pick up her paramour. While driving, Wife glanced in her rearview mirror and observed Husband driving a silver Ford Escape. Wife continued driving and Husband moved into the passing lane; instead of passing her, Husband matched her speed and

continued to drive next to her. Wife saw an object in Husband's hand, but could not identify it. After driving next to Wife for a considerable distance, Husband abruptly accelerated and moved back into Wife's lane. This caused Wife to slam on her breaks to avoid a collision. Wife was scared and in fear for her life.

In an attempt to escape Husband, Wife accelerated her car into the left lane and tried to speed away. Husband then moved back into the left lane and followed Wife's car so closely that she could no longer see the grille of his vehicle in the rearview mirror, but could clearly observe that he looked angry and that his expression was one that she had seen before when he had previously acted abusively. Ultimately, Wife was able to put a little distance between herself and Husband and he eventually exited the highway. *See* N.T. PFA Hearing, 4/12/2018, at 4-13.

After the issuance of the temporary PFA on April 2, 2018, and Wife's regaining possession of the marital residence, she discovered that Husband had set up multiple security cameras aimed at her mother's residence and had been using them to photograph both her and other individuals coming in and out of the residence. *Id.* at 21-27. The trial court admitted those photographs into evidence at the hearing.

On April 13, 2018, at the start of the second day of testimony, Husband requested that the trial judge recuse herself, claiming that the judge had already decided the case in Wife's favor, had evidenced bias against Husband

throughout the divorce proceedings, and had acted improperly to have the case reassigned to herself. N.T. PFA Hearing, 4/13/2018, at 153-154. The trial judge denied the request and, after hearing testimony from Husband's four character witnesses, found in favor of Wife and issued a final three-year PFA order.

The instant, timely appeal followed. On May 11, 2018, Husband *sua sponte* filed a concise statement of errors complained of on appeal. On June 15, 2018, the trial court issued an opinion.

Husband appeals from the grant of a final PFA order. Initially, we note the following:

> [I]n a PFA action, we review the trial court's legal conclusions for an error of law or abuse of discretion. **Lawrence v. Bordner**, 2006 PA Super 246, 907 A.2d 1109, 1112 (Pa. Super. 2006). In **Commonwealth v. Widmer**, 560 Pa. 308, 322, 744 A.2d 745, 753 (2000), our Supreme Court defined "abuse of discretion" in the following way:
>
>> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, with the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.
>
> **Id.** at 322, 744 A.2d at 753 (quoting **Coker v. S.M. Flickinger Co., Inc.**, 533 Pa. 441, 447, 625 A.2d 1181, 1184-85 (1993)).

> ***Custer v. Cochran***, 2007 PA Super 290, 933 A.2d 1050, 1053-54 (Pa. Super. 2007) (*en banc*). Credibility of the witnesses and the weight accorded their testimony is within the exclusive province of the judge as fact finder. ***Karch v. Karch***, 2005 PA Super 342, 885 A.2d 535, 537 (Pa. Super. 2005) (citation omitted).

***Mescanti v. Mescanti***, 956 A.2d 1017, 1019-1020 (Pa. Super. 2008).[2]

In his first issue, Husband argues variants on the same theme, namely that the trial judge was biased against him and abused her discretion by: "coaching [Wife] to file a petition for a [PFA]," at the March 27, 2018 conference in the divorce proceedings; "considering [Wife's] unsworn statements made" in the divorce proceedings "as the equivalent of testimony[;]" and "erred in not recusing [her]self in light of the relationship that was disclosed with Wife's paramour[.]" Husband's Brief, at 10. We disagree.

Our standard of review of a trial court's denial of a motion to recuse is "exceptionally deferential." ***In re A.D.***, 93 A.3d 888, 892 (Pa. Super. 2014) (citation omitted). We "recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge [her]self is best qualified to gauge [her] ability to preside impartially." ***Id.*** (internal quotations and citation omitted).

---

[2] "This Court has emphasized that '[t]he purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse.'" ***T.K. v. A.Z.***, 157 A.3d 974, 976 (Pa. Super. 2017) (citation omitted).

The party seeking recusal "must satisfy the burden to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Id.* (internal quotations and citation omitted). We have stated "a mere recitation of unfavorable rulings against an attorney does not satisfy the burden of proving judicial bias, prejudice or unfairness." ***Ware v. U.S. Fidelity & Guar. Co.***, 577 A.2d 902, 904 (Pa. Super. 1990). Rather, "[a] party seeking recusal must assert specific grounds in support of the recusal motion before the trial judge has issued a ruling on the substantive matter before him or her." *Id.* at 905.

Husband is partially claiming judicial bias based upon the March 27, 2018 conference. *See* Husband's Brief, at 23-32. He alleges that statements made at that conference either induced Wife to seek a PFA order or improperly influenced the trial judge in her decision to grant the order. *Id.* However, he waived the claim.

The March 27, 2018 conference was part of the divorce proceedings filed in case 2017-FC-000856-15. The PFA proceedings are filed to case number 2017-FC -000856-12. Thus, the transcript of the conference is not part of the certified record in this proceeding. Further, our review of the record demonstrates that Husband did not ask that the transcript been entered into evidence in the PFA proceedings. *See* N.T. PFA Hearing, 4/12/2018-4/13/2018, at 1-210. Thus, the trial court did not forward the transcript to this Court; however, Husband did include it in the reproduced record.

- 6 -

Under the Pennsylvania Rules of Appellate Procedure, any documents that are contained in the reproduced record but are not a part of the official certified record do not exist. *Daniel v. Wyeth Pharmaceuticals, Inc.*, 15 A.3d 909, 936 n.1 (Pa. Super. 2011) (Fitzgerald, J. concurring), *appeal dismissed as improvidently granted*, 82 A.3d 942 (Pa. 2013). As this Court has stated:

> . . . we can only repeat the well established principle that "our review is limited to those facts which are contained in the certified record" and what is not contained in the certified record "does not exist for purposes of our review." *Commonwealth v. O'Black*, 897 A.2d 1234, 1240 (Pa.Super. 2006). As this Court thoroughly summarized in *Commonwealth v. Preston*, 904 A.2d 1 (Pa.Super. 2006) (*en banc*), *appeal denied,* 591 Pa. 663, 916 A.2d 632 (2007):
>
> > The fundamental tool for appellate review is the official record of the events that occurred in the trial court.
> >
> > **＊ ＊ ＊ ＊**
> >
> > This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record. This requirement is not a mere 'technicality' nor is this a question of whether we are empowered to complain *sua sponte* of *lacunae* in the record. In the absence of an adequate certified record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted.
> >
> > The certified record consists of the 'original papers and exhibits filed in the lower court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court.' Pa.R.A.P. 1921. Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense

that it contains all of the materials necessary for the reviewing court to perform its duty. To facilitate an appellant's ability to comply with this requirement, our Supreme Court adopted the following procedural rule effective as of June 1, 2004:

> The clerk of the lower court shall, at the time of the transmittal of the record to the appellate court, mail a copy of the list of record documents to all counsel of record, or if unrepresented by counsel, to the parties at the address they have provided to the clerk. The clerk shall note on the docket the giving of such notice.

Pa.R.A.P. 1931(d). As the explanatory comment to Rule 1931 indicates, if counsel (or a party) discovers that anything material has been omitted from the certified record, the omission can be corrected pursuant to the provisions of Rule of Appellate Procedure 1926. Under Rule 1926, an appellate court may direct that an omission or misstatement shall be corrected through the filing of a supplemental certified record. However, this does not alter the fact that the ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts. Pa.R.A.P. 1931.

*Commonwealth v. B.D.G.*, 959 A.2d 362, 372-373 (Pa. Super. 2008) (*en banc*); *see also Jahanshahi v. Centura Development Co., Inc.*, 816 A.2d 1179, 1183 (Pa. Super. 2003); *D'Ardenne v. Strawbridge and Clothier, Inc.*, 712 A.2d 318, 326 (Pa. Super. 1998), *appeal denied*, 734 A.2d 394 (Pa. 1998).

- 8 -

Husband did not move, pursuant to Pa.R.A.P. 1926, to supplement the record. Moreover, he did not include the March 27, 2018 proceedings in his request for transcripts.[3] **See** Request for Transcripts, 5/11/2018.

Husband also argues that the trial judge erred in denying his recusal motion based upon her relationship with Wife's paramour.[4] Husband's Brief, at 32-33. However, this claim is time barred.

Our Supreme Court has stated, "a party seeking recusal or disqualification on the basis of judicial bias or impartiality [is required] to raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred." **In re Lokuta**, 11 A.3d 427, 437 (Pa. 2011) (citations omitted; brackets in original), *cert. denied*, 565 U.S. 878 (2011).

Here, Husband did not seek the trial judge's recusal until the second day of hearings. **See** N.T. PFA Hearing, 4/13/2018, at 153-154. Moreover, despite the claim made in Husband's brief that the basis of his motion was the

---

[3] We did not request the trial court to provide the transcript of the March 27, 2018 conference because it is not part of "the original papers and exhibits filed in the lower court," or part of the transcripts of the proceedings in this case. **See B.D.G., supra**; Pa.R.A.P. 1921.

[4] Wife's paramour is a deputy sheriff. The relationship in question appears to be that the trial judge saw him around the courthouse and knew his name. **See** N.T. PFA Hearing, 4/12/2018, at 81. There is no indication that the deputy sheriff ever worked in Judge Prendergast's courtroom. For the sake of completeness, we note that Judge Prendergast had a similarly casual relationship with one of Husband's witnesses. N.T. PFA Hearing, 4/23/2018, at 159-160.

trial judge's "relationship" with Wife's paramour, the record reflects that this contention was something of an afterthought. *See* Husband's Brief, at 32-33; N.T. PFA Hearing, 4/13/2018, at 153-154. It is evident from the record that the primary basis of Husband's motion was his belief that the trial judge was biased because of her actions at the March 27, 2018 conference and her hearing of the *ex parte* petition for a temporary PFA order. *Id.* Husband was aware of these facts before the commencement of the PFA hearing.

The deputy sheriff was the third and final witness to testify on behalf of Wife. N.T. PFA Hearing, 4/12/2018 at 81. The trial judge, immediately prior to the start of his testimony, informed the parties that she knew the deputy sheriff from seeing him around at the courthouse. *See id.* Husband did not move for recusal at that time, did not make any objections to the deputy sheriff's testimony, did not question him about his "relationship" with the judge, and did not move for recusal at the close of his testimony. *Id.* at 81-94. Instead, after Wife rested, Husband testified. He did not move for recusal until the next morning. N.T. PFA Hearing, 4/13/2018, at 153-154. Because he did not make his motion at the earliest possible opportunity, it is time barred. *Lomas v. Kravitz*, 170 A.3d 380, 390 (Pa. 2017) (holding "In this Commonwealth, a party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present a motion to recuse at that time,

then the party's recusal issue is time-barred and waived.") (citations omitted).

Accordingly, we find that Husband waived his first claim on appeal.[5]

In his second issue, Husband contends, "[t]he trial court erred in misconstruing facts that were presented as evidence in the hearing on the final [PFA] Order." Husband's Brief, at 34. We are unable to determine from Husband's argument on this issue whether he is challenging the sufficiency or the weight of the evidence or both. *Id.* at 34-38. We will address both the sufficiency and the weight.

When a claim is presented on appeal that the evidence is not sufficient to support an order of protection from abuse, the appellate court must "view the evidence in the light most favorable to the verdict winner, granting her the benefit of all reasonable inferences[.]" **Fonner v. Fonner**, 731 A.2d 160, 161 (Pa. Super. 1999). Section 6107(a) of the PFA Act provides "the plaintiff must prove the allegation of abuse by a preponderance of the evidence." 23 Pa.C.S.A. § 6107(a). "The preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or

_____

[5] In any event, the claim lacks merit. As noted above, there was no "relationship" between the trial judge and the deputy sheriff apart from working in the same building. Moreover, we have thoroughly reviewed both the transcripts of the *ex parte* hearing seeking a temporary PFA order and the final hearing. We find nothing in the transcripts that demonstrates any bias on the part of the trial court. Husband's claim is nothing more than cherry picking the transcript to find instances where the trial judge sustained objections from Wife's counsel. This is not sufficient to prove judicial bias. **See Ware**, **supra** at 902. Even if he had not waived it, Husband's claim would fail.

requirement for preponderance of the evidence." ***Ferri v. Ferri***, 854 A.2d 600, 603 (Pa. Super. 2004).

The PFA defines "abuse" in pertinent art, as follows:

The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

* * * *

(2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S.A. § 6102(A)(2).

Here, the evidence at the hearing, viewed in the light most favorable to Wife, established that she was driving on the highway when Husband first began to follow her, then pulled next to her and matched her speed. He then cut her off, nearly causing an accident. When she tried to pull away from him, he began to tailgate her so closely that she could not see the grille in the front of his car. Wife testified she was in fear for her life. This evidence was sufficient to demonstrate that Husband placed her in reasonable fear of imminent serious bodily injury. ***See Thompson v. Thompson***, 963 A.2d 474, 478 (Pa. Super. 2008) (holding son's testimony that while walking to school father followed him in car, screaming at him, then sped past him so closely that he swiped son's jacket sufficient to sustain grant of PFA order). This issue does not warrant any relief.

Husband also contends that the grant of the PFA order was against the weight of the evidence. The Pennsylvania Supreme Court has expounded upon the nature of the appellate standard of review for a weight claim:

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citation and emphasis omitted). Accordingly, we focus on whether the trial court's ruling is "manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Id.*

Here, it was the trial court's determination that Wife was credible and Husband was not. Trial Court Opinion, 6/15/2018, at 5. Therefore, no relief is due.

In his final claim, Husband argues that the trial court erred in evicting him from the marital residence when Wife had two other homes in which she

- 13 -

could reside. Husband's Brief, at 39-40. Husband contends that the exclusion inappropriately penalized him for past conduct. *Id.* at 39.

Initially, we note that Husband has failed to cite to any pertinent legal authority to demonstrate that the trial court exceeded the bounds of the PFA Act. In its 1925(a) opinion, the trial court explained its decision as follows:

> The sixth and final issue raised is whether [the trial c]ourt erred by evicting Husband from the marital residence, despite that Wife no longer resided there and had two other homes w[h]ere she could reside. This issue was thoroughly addressed in the [o]pinion on record from the Final PFA on April 13, 2018. Specifically, [the trial c]ourt indicated that typically [it] would not be willing to grant Wife exclusive possession under these facts. However, Wife was residing with her elderly mother to help take care [of] her in the home across the street from the [marital] residence. Due to significant, credible testimony and evidence presented at the [f]inal PFA hearing, [the court] was concerned for Wife. During the time in which Husband had exclusive possession of the [marital] home, he was routinely photographing and video recording Wife's daily life in behavior that qualified as stalking. The other home being referenced was a farm owned by Wife's mother and would mean that Wife would not be accessible to care for her elderly mother. Therefore, this Court was forced to grant Wife exclusive possession of the marital residence upon granting Wife the PFA order.

Trial Court Opinion, 6/15/2018, at 6.

Our review of the record confirms the trial court's finding. Wife presented evidence that not only had Husband been using the security equipment attached to the marital residence to stalk her in the past, but that he continued to attempt to do so **after** the entry of the temporary PFA order. *See* N.T. PFA Hearing, 4/12/2018, at 18-27; 59-63; 69-71; 75-77. Moreover, the record reflects that this is not a situation where Husband acknowledged

that he was wrong to stalk Wife and agreed not to do it again but rather throughout the hearing both he and his counsel attempted to excuse the behavior, including his violation of the temporary PFA order. *See id.* at 59-63; 76-77; 110-113;119-120. We find no abuse of discretion or error of law in the trial court's granting Wife exclusive possession of the marital residence. This issue does not merit relief.

Accordingly, for the reasons discussed above, we affirm the grant of the PFA order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/26/2019