J-A18030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NYKIA HARRISON A/K/A NYKIA DAVIS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 3000 EDA 2024 |
| MALIK T. HARRISON | : | |

Appeal from the Order Entered October 24, 2024
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): 2408V7832

BEFORE: OLSON, J., DUBOW, J., and BECK, J.

MEMORANDUM BY DUBOW, J.: **FILED OCTOBER 3, 2025**

Appellant, Nykia Harrison a/k/a Nykia Davis ("Mother"), appeals from the October 24, 2024 order entered in the Philadelphia Court of Common Pleas that denied the petition for protection from abuse ("PFA") that she filed against her ex-husband, Malik T. Harrison ("Father"), pursuant to the PFA Act, 23 Pa.C.S. §§ 6101-6122. Upon careful review, we affirm.

We glean the following factual and procedural history from the trial court's opinion. Mother and Father are ex-spouses and parents to five-year-old E.N. ("Child"). The parties separated in 2018 while Mother was pregnant with Child. Mother claims that the separation occurred after Father attempted to sexually assault her; Father denies this allegation. The parties have been divorced since 2019 and have shared legal and physical custody of Child.

Since July 2024, the parties have been meeting in an Applebee's parking lot in Andorra for custody exchanges. Generally, during the custody exchange, the parties would park approximately 50 feet apart and the custodial parent would exit their vehicle, assist Child out of his car seat, and walk Child halfway to the other parent's car. On August 11, 2024, Mother's paramour ("Paramour") drove Mother and Child to the custody exchange. Mother was a front seat passenger and Child was in a car seat in the back seat behind Mother. During the exchange, Mother got out of the car, opened the passenger side door, and began to unbuckle Child. Father got out of his vehicle, approached quickly, and stood near Mother as she attempted to get Child out of his car seat. According to Mother, she asked Father to back up twice and Father did not reply or move. At this point, Paramour, who was still seated in the driver's seat, rolled down the passenger side window and said, "bro, can you please back up f[rom] her." *Trial Ct. Op.* at 5 (unpaginated). Father then stated to Paramour, "I don't talk to you, I am here for my son." *Id.* Paramour exited the vehicle and walked around the front, stopping at the driver's side headlight. Father looked at Paramour, lifted up his shirt, showed his gun, and said, "I'll air you out right here." *Id.* Paramour responded by asking, "Did you just flash me?" *Id.* at 6 (unpaginated). Child began crying and attempted to go to Father for comfort. Mother began recording the incident on her phone, prompting Father to change his demeanor and say, "I just want my son." *Id.* After Child ran to Father, Father picked up Child and stuck his tongue out at Mother and Paramour. Mother informed Father she

- 2 -

was calling the police. Father initially waited for police to arrive but eventually started to leave. As Father was leaving, he saw police arrive and returned to make a statement. Police did not arrest Father. Mother filed a PFA petition.

On August 12, 2024, following an *ex parte* hearing, trial court granted Mother a temporary PFA order that, *inter alia*, prohibited Father from having any contact with Mother and ordered him to relinquish any firearms to the sheriff. On August 19, 2024, the court granted a continuance of the final PFA hearing and amended the temporary PFA order to state that all custody exchanges were to take place at the 5th Police District of Philadelphia.

On October 24, 2024, the trial court held a final PFA hearing. The court heard testimony from Mother, Paramour, and Father. At the conclusion of the hearing, the court denied Mother's PFA petition.

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

Mother raises the following issues for our review:

1. Whether the lower court erred and abused its discretion in finding no abuse pursuant to 23 Pa.C.S. § 6102(a)(1), (2) and/or (3), where the evidence was sufficient to support a finding [Father] abused [Mother].

2. Whether the trial court's reasons for finding no abuse by [Father] against [Mother] were vague and/or not fully discernible at the conclusion of the hearing.

3. Whether the lower court erred and abused its discretion when it failed to consider the reasonableness of [Mother]'s fear of imminent serious bodily injury based on prior acts against her by [Father] when [Father] came to her car and admitted flashing his gun, amongst other things.

4. Whether the lower court erred and abused its discretion when it failed to consider the prior acts of abuse against [Mother] by [Father] based on [Mother]'s alleged failure to offer medical testimony and/or documentation of her mental health injuries/diagnoses related to those prior acts, amongst other things.

5. Whether the lower court erred and abused its discretion [when] it prevented [Mother] from due process protections of the PFA Act ("Act") by misapplying PFA jurisprudence and rationale/purpose to the facts of the case, specifically related to [Mother]'s medical diagnosis and the parties' interactions due to frequent court appearances, amongst other things, after November 2018.

6. Whether the lower court erred and abused its discretion in finding [Mother] and [Father] stipulated [Father] flashed his firearm on August 11, 2024.

Mother's Br. at 1-3 (reordered for ease of disposition; some capitalization omitted).

In a PFA action, this Court reviews the trial court's legal conclusions for an error of law or an abuse of discretion. *Custer v. Cochran*, 933 A.2d 1050, 1053-54 (Pa. Super. 2007) (*en banc*). A trial court does not abuse its discretion for a mere error of judgment; rather, we will find an abuse of discretion "where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill will." *Mescanti v. Mescanti*, 956 A.2d 1017, 1019 (Pa. Super. 2008) (citation omitted). Moreover, on appeal, this Court will defer "to the credibility determinations of the trial court as to witnesses who appeared before it." *Karch v. Karch*, 885 A.2d 535, 537 (Pa. Super. 2005) (citation omitted). It is well-settled that "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free

to believe all, part or none of the evidence." ***Commonwealth v. Walsh***, 36 A.3d 613, 619 (Pa. Super. 2012) (citation omitted). Finally, we review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court. ***Snyder v. Snyder***, 629 A.2d 977, 982 (Pa. Super. 1993).

The purpose of the PFA Act is "to protect victims of domestic violence from those who perpetrate such abuse" and "its primary goal is advance prevention of physical and sexual abuse." ***Lawrence v. Bordner***, 907 A.2d 1109, 1112 (Pa. Super. 2006) (citation and internal quotation marks omitted). "[T]he [PFA] Act does not seek to determine criminal culpability. A petitioner is not required to establish [that] abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence." ***Snyder***, 629 A.2d at 982. A "preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." ***Raker v. Raker***, 847 A.2d 720, 724 (Pa. Super. 2004).

The PFA Act defines the term "abuse," in relevant part, as follows:

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

* * *

23 Pa.C.S. § 6102(a)(1), (2), (3). The Pennsylvania crimes code defines false imprisonment, in relevant part, as "knowingly restrain[ing] another unlawfully as to interfere substantially with [his or her] liberty." 18 Pa.C.S. § 2903.

In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury and the intent of the alleged abuser "is of no moment." *See Raker*, 847 A.2d at 725. Since the PFA act's goal is to prevent abuse, a victim does not have to wait for abuse to occur for the act to apply. *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1262-63 (Pa. Super. 2008). Past conduct can be relevant to this consideration. *Id.* at 1263.

In her first two issues, Mother avers that the trial court abused its discretion when it found that no abuse occurred pursuant to Section 6102 (a)(1), (2), and (3). Mother's Br. at 1-3. Mother argues that Father admitted to flashing his gun and "the reasonable inference in all the testimony is Father threatened to shoot Mother and [Paramour] in the presence of [C]hild." *Id.* at 29. Mother asserts that this is sufficient evidence to find that Father attempted to cause serious bodily injury, *i.e.*, abuse under Section 6201(a)(1) and placed Mother under reasonable fear of imminent serious bodily injury under Section 6201(a)(2). *Id.* at 29-30.

It is undisputed that Father brandished a gun during the custody exchange. The trial court acknowledged that Mother testified that this incident made her feel afraid, but the court did not find this testimony to be credible. Trial Ct. Op. at 19 (unpaginated). Moreover, the trial court found that Father brandished a gun and directed verbal threat to Paramour, rather than Mother, rejecting Mother's claim that Father attempted to cause her bodily injury with a deadly weapon. *Id.* The court opined:

> This [c]ourt had the opportunity to observe both parties when they testified and found that [Father] was credible, and [Mother] was not credible. Although [Mother] testified that she was afraid, she admitted that the argument that resulted in [Father] showing his gun was between [Paramour] and [Father], not between [Mother] and [Father]. Based on credible testimony from both [Father] and [Paramour], the [c]ourt finds credible that the gun was not shown to [Mother], and the words "I will air you out," while threatening, were not directed at [Mother], but rather they were directed at [Paramour].

*Id.* Based on this, the trial court concluded that Father's conduct did not rise to the level of "abuse" under Sections 6102(a)(1) and (2).

We defer to the trial court's credibility determination with regards to Mother and her testimony regarding her fear. The court based its credibility determination on observation of Mother in court, inconsistencies in Mother's testimony, and Mother's own testimony that she "doesn't have a clear memory" of parts of the alleged incident. *Id.* at 6, 7, 19 (unpaginated). Simply put, the court did not believe Mother's testimony that she was in reasonable fear of imminent bodily injury pursuant to Section 6102(a)(2).

- 7 -

Moreover, the record supports the trial court's findings that Father brandished his gun and made threats to Paramour, rather than Mother, and we discern no abuse of discretion in the trial court's finding that Mother failed to demonstrate abuse pursuant to Section 6102(a)(1). **See D.H. v. B.O.**, 734 A.2d 409, 411–12 (Pa. Super. 1999) (holding that conduct did not amount abuse under the PFA Act where the only physical threats the ex-boyfriend made were directed towards petitioner's co-worker and the ex-boyfriend never threatened to cause physical injury to petitioner).

Upon review, the record supports the trial court's findings. We decline to usurp the trial court's credibility determinations or reweigh the evidence. Accordingly, we discern no error.

Mother next argues that, even with the evidence taken in the light most favorable to Father, she presented sufficient evidence to support a finding of abuse by the infliction of false imprisonment under Section 6201(a)(3). Mother's Br. at 25. Mother further argues that "Father abused Mother by restraining her liberty to leave the back passenger side of her car, without her permission or consent" despite several requests from both Mother and Paramour for Father to back up. Mother's Br. at 25-26.

In finding that Mother failed to present sufficient evidence to find abuse under Section 6201(a)(3), the trial court credited Father's testimony that "he was never standing directly behind Mother and there was always a [car] door between the parties." Trial Ct. Op. at 10. Moreover, the Court credited Mother's testimony that this interaction made Mother uncomfortable but found

that it did not rise to the level of Father knowingly restraining Mother unlawfully so as to interfere substantially with her liberty. "The [c]ourt found [Mother] credible in that she felt her space was invaded; however, this did not equate to [Mother] satisfying her burden[.]" Trial Ct. Op. at 15 (unpaginated). Upon review, the record supports the trial court's findings, and we discern no abuse of discretion.

In her third issue, Mother avers that the trial court failed to consider prior acts of abuse when it analyzed the reasonableness of Mother's fear towards Father. Mother's Br. at 8. Specifically, Mother argues that the trial court failed to consider Mother's claim that Father attempted to sexually assault her in 2018 while they were married. *Id.* at 14-17.

"It is proper for a trial court to admit evidence of prior abusive acts not raised in the PFA petition." *Custer*, 933 A.2d at 1059 n. 11. "In light of the protective purposes of the [PFA A]ct, it [i]s within the trial court's discretion to hear any relevant evidence that would assist it in its obligation to assess the [petitioner]'s entitlement to and need for a protection from abuse order." *Buchhalter*, 959 A.2d at 1264 (citation omitted). However, "[i]f the trial court [finds] the testimony to involve events too distant in time to possess great relevance to the case, it [can] certainly [] assign[] less weight to the testimony." *Id*.

Here, the trial court heard and considered Mother's testimony regarding the alleged incident, but the court did not find Mother's testimony to be

probative or relevant. The court found that the alleged 2018 incident was "too attenuated" from the allegations in the PFA petition. The court opined:

> Appellant testified that in 2018, when parties were still in a relationship, [Father] attempted to force [Mother] to have sexual intercourse while she was sleeping but was unsuccessful due to [Mother] loudly protesting in hopes that [Father]'s mother (who resided in the same building) would hear and [Father] would stop. . . Although testimony alone can be sufficient for the [c]ourt to find abuse, the [c]ourt does not believe that enough testimony or evidence was given to support a finding of prior abuse to indicate a pattern of abuse that would make [Mother]'s fear of harm reasonable. Moreover, the alleged prior abuse occurred in 2018, at least six years prior to the current filing, and prior to the birth of their minor child. Parties were living together following the alleged abuse in 2018. The [c]ourt finds this incident to be too attenuated from the August 2024 incident to establish a pattern of abuse sufficient for a finding resulting in a PFA order.

Trial Ct. Op. at 23. It was within the trial court's discretion to place little to no weight on Mother's testimony regarding the alleged 2018 incident and we discern no abuse of discretion.

In her fourth issue, Mother avers that the trial court erred when it failed to consider prior acts of abuse based on Mother's failure to offer medical testimony or documentation of her mental health diagnoses related to those prior acts. Mother's Br. at 2. In her brief to this Court, Mother pivots her issue and argues that the court erred when it sustained a hearsay objection correlating the alleged November 2018 assault with her "PTSD" diagnosis. *Id.* at 9. This evidentiary argument was not included in her Rule 1925(b) statement and is, therefore, waived. *See* Pa.R.A.P. 1925(b)(5)(vii) (Issues not included in the [s]tatement . . . are waived).

In her fifth issue, Mother avers that the lower court erred and abused its discretion when it prevented Mother "from due process protections of the PFA Act ("Act") by misapplying PFA jurisprudence and rationale/purpose to the facts of the case, specifically related to [Mother]'s medical diagnosis and the parties' interactions due to frequent court appearances, amongst other things, after November 2018." Mother's Br. at 2.

In her brief, Mother combines the argument section for issues 3, 4, and 5 under one heading, in violation of Rule 2119. **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.") Because the argument for the issues is combined, this court is unable to ascertain what, if any, specific argument Mother asserts regarding this fifth issue. Accordingly, we find this issue to be waived. **See Milby v. Pote**, 189 A.3d 1065, 1079 (Pa. Super. 2018) ("We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem issue to be waived.").

In her final issue, Mother avers that the trial court erred and abused its discretion in finding that Mother and Father had stipulated that Father flashed his gun on August 11, 2024. Mother's Br. at 6. Notably, Mother fails to explain how this prejudiced her.

- 11 -

It is well settled that "a bald assertion of error by the trial court without any attempt to demonstrate prejudice will not provide a basis for relief." ***Eichman v. McKeon***, 824 A.2d 305, 319 (Pa. Super. 2003). We agree with Mother that at the beginning of the hearing, the parties stipulated to three facts and this was not one of them. However, this fact was not in dispute because Mother, Father, and Paramour all testified that Father lifted his shirt to show his gun on August 11, 2024. Accordingly, we fail to see how this error prejudiced Mother and Mother is not entitled to relief.

In sum, reviewing the evidence of record in the light most favorable to, and granting all reasonable interreferences to, Father as the party that prevailed before the court, we find no abuse of discretion in the trial court's denial of Mother's PFA petition regarding Father.

Order affirmed.

Judge Beck joins the memorandum.

Judge Olson concurs in result.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/3/2025

- 12 -